# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| Neelu Pal, <br><br> Plaintiff, <br><br> v. <br><br> Robert Cipolla et al., <br><br> Defendants. | Civil No. 3:18-CV-00616 (MPS) <br><br><br><br> February 5, 2020 |

## RULING ON DISCOVERY MOTIONS [DOC. NOS. 108, 110, 112]

This is a civil rights case in which the plaintiff alleges that the defendants – four police officers and two EMTs – violated her rights during and after a search and arrest. All six defendants have moved for an order extending their time for deposing the plaintiff's medical providers and minor children until after the Court rules on their anticipated motions for summary judgment. (ECF Nos. 108, 110.) The four police officers also seek an order compelling the plaintiff to provide an authorization allowing further discovery from the Department of Children and Families. (ECF No. 112.) The plaintiff opposes all three motions. (ECF Nos. 111, 116, 118, 123.)

As set forth more fully below, Motions 108 and 110 are **GRANTED IN PART AND DENIED IN PART.** The two motions are denied to the extent that they seek to postpone any discovery until after summary judgment motions are decided, and to the extent that they seek any extension of the existing deadline for deposing the plaintiff's children. The motions are granted only to the extent necessary to complete those medical provider depositions that remain uncompleted because the plaintiff did not timely produce (or authorize the defendants to obtain) her full medical record. Motion 112 is **GRANTED**, and the plaintiff is directed to provide the police officer defendants with an authorization by 5:00 p.m. on Friday, February 7, 2020.

1. **Background**

This case arises out of a disputed series of events that began in 2015. At that time, the plaintiff was a Wilton resident whose son attended the Goddard School. (2d Am. Compl., ECF No. 49, ¶ 19.) In April 2015, she received several phone calls from a Goddard School employee, and she says that she "became alarmed at [the employee's] threatening tone." (*Id.* ¶¶ 21, 23.) On the morning of April 29, 2015, she thought she saw this employee repeatedly drive past her house, and she became additionally "concern[ed]" and "fear[ful]." (*Id.* ¶¶ 26, 28.) She called the Wilton Police "via landline and via 911" to report her concerns. (*Id.* ¶ 28.)

The parties disagree on almost all of what happened next. The plaintiff alleges that the police officer defendants responded to her call and "forcibly pulled her out of her home, and arrested her." (*Id.* ¶ 38.) She also alleges that the officers "placed her in handcuffs, searched her body, in the process sexually assaulting her by repeatedly and forcefully groping her breast, and then forcibly imprisoned her in the rear of a police cruiser." (*Id.* ¶ 41.) The plaintiff "was ultimately sent to Norwalk Hospital pursuant to Connecticut General Statutes § 17a-503"[1] (Rule 26(f) Rpt., ECF No. 32, at 2), and she contends that while she was at the hospital, the defendants conducted an unlawful search of her home and stole money and jewelry. (2d Am. Compl., ECF No. 49, ¶¶ 56-57, 102-05.) She alleges "severe bodily injuries," "severe emotional distress," "severe symptoms associated with depression and post-traumatic stress disorder" and other injuries. (*Id.* ¶¶ 82-89.) The defendants have denied almost all the material allegations of the operative complaint. (*See* ECF Nos. 28, 81.)

---

[1] This statute provides, in part, that "[a]ny police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination." Conn. Gen. Stat. § 17a-503 (2010).

Importantly for Motions 108 and 110, the plaintiff alleges that her two children witnessed many of the disputed events. She asserts that her "child/children" observed Officer Robert Cipolla searching her home, and she cites the "actions witnessed by [her] child" as one of her reasons for believing that Officer Cipolla stole her money and jewelry. (2d Am. Compl., ECF No. 49, ¶¶ 56-58.) Additionally, the parties have learned that a Department of Children and Families ("DCF") social worker named Nereida Builes also came to the home that day and may have witnessed some of the disputed events.

The plaintiff filed her initial complaint nearly two years ago, on April 10, 2018. (ECF No. 1.) The parties held their Rule 26(f) conference in June 2018. (Rule 26(f) Rpt., ECF No. 32, at 1.) They agreed that discovery would not be phased, and they agreed to complete all discovery by August 1, 2019. (*Id.* at 6.) On the plaintiff's motion, the Court extended this deadline to December 1, 2019. (ECF Nos. 64, 76.) The plaintiff filed another motion seeking to extend the deadline even further, to April 1, 2020 (ECF No. 93), but the Court granted it only in part. (ECF No. 98.) It extended the deadline only to February 1, 2020, and it wrote that "[b]ecause the Court has now afforded multiple, substantial extensions in this case, and because there does not appear to be good cause for further delay, the Court will not further extend the schedule in this case." (*Id.*)

Around the time of this final extension order, a dispute arose over the defendants' inquiry into the plaintiff's interactions with DCF. The defendants sought production of "a written finding of [child] neglect DCF issued as a result of the incident that is the subject of this action" (ECF No. 96-2, at 2), and the plaintiff resisted production on the ground that "DCF records . . . are protected by law from discovery." (ECF No. 96-1, at 1; *see also* Pl.'s Mot. for Prot. Order, ECF No. 105.) The Court substantially agreed with the defendants, holding that they had "made a sufficient showing of relevance for discovery purposes." (ECF No. 107.) The Court rejected the plaintiff's

argument that DCF records were immune from discovery in a civil suit: "The fact that any such material might otherwise be protected by Conn. Gen. Stat. 17a-28 does not prevent this Court from ordering the plaintiff to produce it in discovery and is certainly not a basis, given that the Court has ordered disclosure, for the Plaintiff to continue to withhold any such material in her possession." (*Id.*) The Court added that "[t]o the extent that the Defendants need Plaintiff to execute a waiver form to allow Defendants to obtain these materials from DCF, the Defendants must provide her with the waiver form [by January 7, 2020] and she must execute it and return it to them [by January 10, 2020]." (*Id.*)

Despite this clear order, the plaintiff did not provide the defendants with an authorization to obtain the "written finding" from DCF. Instead, she provided them with the written finding itself, albeit in redacted form. The defendants have not objected to her redactions, but they contend that the lack of an authorization has prevented them from taking follow-up discovery. (*See generally* ECF No. 112-1.) They say that the DCF social worker, Ms. Builes, is unwilling to sit for a deposition without an authorization. (*Id.* at 3-4.)

The disagreement over the plaintiffs' interactions with DCF is not the parties' only discovery dispute. They also dispute the completeness of the plaintiff's lists of medical providers and her production of medical records and bills. On December 2, 2019, the Court ordered the plaintiff to produce "an itemization of medical damages allegedly incurred by the plaintiff and a list of the medical providers who treated the injuries she allegedly suffered" within fourteen days – in other words, by December 16, 2019. (ECF No. 96, at 3.) The Court then extended this deadline to January 30, 2020. (ECF No. 107.)

The undersigned held a nearly two-hour discovery conference on January 31, 2020. (ECF No. 124.) In that conference, the police officer defendants conceded that the plaintiff had already

4

identified several medical providers in her July 2019 interrogatory responses. They contended, however, that other medical providers had been identified for the first time only in January 2020. They also asserted that the plaintiff failed to provide a complete "itemization of medical damages," and that she has not produced all her medical bills and reports. The plaintiff did not persuasively dispute that she identified some providers for the first time in January 2020, nor did she dispute that she has not produced her entire medical record. She says, however, that she long ago provided the defendants with signed authorization forms that would permit them to obtain those records for themselves.

In Motions 108 and 110, the defendants seek an order "preserv[ing] their ability to depose plaintiff's medical providers and plaintiff's two minor children until after a ruling on their anticipated motion for summary judgment." (ECF Nos. 108 (police defendants' motion) and 110 (EMT defendants' joinder).) In Motion 112, the police defendants seek an order compelling the plaintiff to provide an authorization broad enough to allay the DCF social worker's concerns and permit her to sit for a deposition. (ECF No. 112.) The plaintiff has opposed all three motions. (ECF Nos. 111, 116, 118, 123.) This ruling resolves all three.

2. Discussion

   a. Motions 108 and 110

Although styled as motions for extension of time under Fed. R. Civ. P. 6(b) and D. Conn. L. Civ. R. 7(b), the Court construes Motions 108 and 110 as motions to amend the scheduling order. "Rule 16(b), not Rule 6(b), applies to scheduling order deadlines." *Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09-CV-6552T, 2011 WL 4711961, at *4 (W.D.N.Y. Sept. 29, 2011) (citing *Carnrite v. Granada Hosp. Grp., Inc.*, 175 F.R.D. 439, 448 (W.D.N.Y. 1997). Where the date that the movant seeks to extend is one that the Court was required to set

5

under Fed. R. Civ. P. 16(b)(3)(A), the motion is ordinarily governed by Rule 16, not Rule 6. *Id.; see also Shemendera v. First Niagara Bank*, 288 F.R.D. 251, 252 (W.D.N.Y. 2012); *Corkrey v. Internal Revenue Serv.*, 192 F.R.D. 66, 66-67 (N.D.N.Y. 2000). The deadline for completing discovery is such a date. Fed. R. Civ. P. 16(b)(3)(A). Since Motions 108 and 110 seek leave to take discovery after the February 1, 2020 deadline, they are governed by Rule 16.

Under Rule 16, motions to amend scheduling orders require a showing of "good cause." Fed. R. Civ. P. 16(b)(4); D. Conn. L. Civ. R. 16(b). In this district, the "good cause" standard requires "a particularized showing that the schedule cannot reasonably be met, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan." *Id.; see also This, LLC v. Jaccard Corp.*, No. 3:15-cv-1606 (JBA), 2016 WL 11582700, at *1 (D. Conn. Nov. 30, 2016). Put even more simply, "[a] finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003).

Citing *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007), some courts in this Circuit have analyzed additional factors beyond the moving party's diligence. "In addition to diligence, other factors to consider when assessing whether to enlarge a discovery deadline include (1) the imminence of trial; (2) whether the request is opposed; (3) prejudice to the moving party; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; and (5) whether further discovery is likely to lead to relevant evidence." *Casagrande v. Norm Bloom & Son, LLC*, No. 3:11-cv-1918 (CSH), 2014 WL 5817562, at *2 (D. Conn. Nov. 10, 2014). Other courts read *Kassner* to say only that "even where the moving party has been diligent, a court may nonetheless deny a late motion . . . when it would prejudice the non-moving party." *Woodworth v. Erie Ins. Co.*, No. 05-CV-6344 CJS, 2009 WL

6

3671930, at *3 (W.D.N.Y. Oct. 29, 2009). These courts do "not understand . . . *Kassner* to mean that where the moving party has *not been diligent,* a court may nonetheless grant the motion if it would not prejudice the non-moving party." *Id.* (emphasis in original)*; accord Shemendera*, 288 F.R.D. at 252-53. In any event, the movant's diligence is, at a minimum, the "primary" area of inquiry. *Kassner*, 496 F.3d at 244. "[T]he moving party must show why it could not have completed the necessary discovery within the time frame established under the existing scheduling order." *Baburam v. Fed. Express Corp.*, 318 F.R.D. 5, 8 (E.D.N.Y. 2016) (citing *Carlson v. Geneva City Sch. Dist.*, 277 F.R.D. 90 (W.D.N.Y. 2011)).

The defendants seek to amend the schedule to allow for depositions of the plaintiff's children after summary judgment motions have been decided, but they have not shown "good cause" for such an amendment. In her very first filing – her initial complaint of April 10, 2018 – the plaintiff disclosed that her children were percipient witnesses to several disputed events. (ECF No. 1, ¶¶ 24, 26, 37, 39.) She also identified her children as witnesses in her July 28, 2019 interrogatory responses.[2] In other words, the defendants have known that the children were potential witnesses for nearly two years – and were told again in an interrogatory response over six months ago. It therefore cannot be said that the February 1, 2020 deadline for deposing them could not "reasonably be met, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan." D. Conn. L. Civ. R. 16(b).

---

[2]  The plaintiff redacted her disclosure of her children from the copy she filed with the Court. (ECF No. 111-2 at p. 4, Resp. No. 15.) At the January 31, 2020 discovery conference, however, the police officers' counsel conceded that the children had been disclosed in the unredacted version that was served in July.

If the plaintiff wishes to file documents that she contends are confidential, she should follow one of the three procedures set forth in D. Conn. L. Civ. R. 5(e)4.

7

Consideration of the additional factors cited in cases like *Casagrande* does not yield a different result. While trial is not imminent – and while the plaintiff's daughter, at least, may have some relevant evidence[3] – the Court declines to hold that these considerations can excuse such a significant lack of diligence. *See*, *e.g.*, *Harnage v. Pillai*, No. 3:17-cv-00355 (AWT) (SALM), 2018 WL 2465355, at *6-7 (D. Conn. June 1, 2018) (considering factors but nevertheless declining to extend discovery period where the movant passed up an "ample opportunity to pursue the evidence during" the existing discovery period). Moreover, the defendants clearly could have foreseen the need for the discovery, considering the allegations made in the complaint – and they could have foreseen the need to take that discovery by February 1, 2020. Judge Shea could not have put the defendants on clearer notice that they might be precluded from taking any depositions after that date. (ECF No. 98.)

The defendants point out that deferring the children's depositions may "avoid embarrassment, prejudice, or undue stress on the plaintiff and her family." (ECF No. 108, at 3.) They add that this is a "sensitive" case, and they "recognize how difficult it may be for plaintiff's children to testify." (*Id.*) These are sensible concerns, and had they been raised when the scheduling order was set in 2018, they might have supported an argument for phasing discovery. But at this late date, they do not constitute "good cause" under Local Rule 16(b) – because they do not explain why the defendants, despite diligent efforts, could not have taken these depositions by the February 1, 2020 deadline for reasons that were not reasonably foreseeable when the schedule was set.

---

[3] The Court is not persuaded that the plaintiff's son is likely to have relevant evidence, since he was only four years old in April 2015.

Motions 108 and 110 are accordingly denied to the extent that they seek to extend the February 1, 2020 deadline for deposing the plaintiff's children. The Court acknowledges that this means that the defendants will go without discovery depositions of witnesses who may appear at trial,[4] but they had more than eighteen months' worth of opportunities to take those depositions. Courts in this Circuit have entered similar orders in cases where the moving party had been more diligent than the defendants have been here. *See*, *e.g.*, *Shemendera*, 288 F.R.D. at 252-53 (ordering that plaintiff could not depose defendants' representatives, even though she had served notices within the deadline, because she did not demonstrate good cause for her failure to follow up).

Additional considerations apply to the defendants' request for more time in which to depose the plaintiff's medical providers – and these additional considerations lead to somewhat different results. Courts have reopened closed discovery periods to permit depositions of medical providers when the moving party shows that it was prevented from taking a timely deposition by the opponent's unexcused failure to produce a complete medical record. *See*, *e.g.*, *Roberites v. Huff*, No. 11-CV-521S, 2015 ,WL 7018556, at *2 (W.D.N.Y. Nov. 12, 2015) (reopening closed discovery period because "defendants reasonably could not have deposed [the doctor] before obtaining all of the records that likely would be discussed at the deposition"); *Carlson*, 277 F.R.D. at 95 (amending scheduling order because deposition would have occurred within existing deadline "but for Carlson's failure to produce requested medical records").

The defendants have demonstrated an entitlement to scheduling relief with respect to some medical providers but not others. At the January 31, 2020 discovery teleconference, the plaintiff did not persuasively dispute that she disclosed the existence of some providers for the first time

---

[4] During the January 31, 2020 teleconference, the plaintiff stated that she may call her daughter as a fact witness at trial. Her daughter is now fourteen years old.

only in January 2020, nor did she dispute that she was still producing medical records to the defendant on January 30, 2020. On the other hand, the defendants acknowledged that the plaintiff had disclosed the names of several providers in her July 2019 interrogatory responses. They also could not confidently deny the plaintiff's claim to have given them authorizations to obtain records from at least some providers. Under these circumstances, the defendants have shown good cause to extend the scheduling order to allow them to depose some – but not all – of the plaintiff's medical providers.

The Court declines the defendants' invitation to schedule these depositions after summary judgment motions are decided. In their Rule 26(f) report, the parties agreed that discovery would not be phased, and the Court is unwilling to phase discovery at this late date and over the plaintiff's objection. It will, however, grant the defendants until February 28, 2020 to depose any medical provider (a) whose existence was not disclosed before January 14, 2020, or (b) for whom the defendants had received neither a complete medical record, nor the plaintiff's authorization to obtain one, by January 14, 2020.[5] Motions 108 and 110 are granted to this limited extent.

b. **Motion 112**

In Motion 112, the four police defendants seek an order compelling the plaintiff to provide an authorization "allowing them to obtain DCF information related to the incidents that are the subject of the plaintiff's complaint against them." (ECF No. 112.) They evidently do not seek *all* "DCF information." They already have the redacted "written finding of neglect," and for the moment they are not seeking the unredacted version. They apparently have not served any

---

[5] The Court expects that the parties will be able to agree on which medical providers fall within the scope of this order. If disputes arise, however, they should be raised with Judge Farrish using the procedure set forth in Judge Shea's published "Instructions for Discovery Disputes." These instructions may be found under the "Judge's Information" menu on the District of Connecticut website, www.ctd.uscourts.gov.

document requests or subpoenas on DCF or any of its employees. Rather, what they want is "to depose DCF social worker Nereida Builes." (ECF No. 112-1, at 5.)

The plaintiff opposes the motion. She first points out that the authorization the police officers now seek is broader than what the Court previously ordered her to provide. (ECF No. 116, at 1-2.) Her principal argument, however, is that "DCF records are confidential and privileged pursuant to Connecticut State law and Federal statutes," and that the police officers are attempting an unwarranted intrusion into her and her children's confidential affairs. (*Id.* at 2-3.) She also argues that the officers can get the same information through other, less intrusive means – specifically, a deposition of their colleague Diane MacLean, who allegedly witnessed the same events as Ms. Builes. (*Id.* at 3-4.) Finally, she contends that "Ms. Builes' impressions of plaintiff, or non-parties in this matter have no bearing on the claims and defenses in this lawsuit." (*Id.* at 4.) In other words, she contends that Ms. Builes does not have any relevant testimony to offer.

The plaintiff is correct that the authorization the officers now seek is broader than what she was previously ordered to provide. On December 2, 2019, the Court ordered the plaintiff to produce the "written finding of neglect DCF issued as a result of the incident that is the subject of this action." (ECF No. 96, at 3.) After the defendants reported problems in obtaining this document directly from DCF (ECF No. 103), the Court ordered that "to the extent that the Defendants need Plaintiff to execute a waiver form to allow Defendants to obtain *these materials*" – that is, "any written finding of neglect" – "the Defendants must provide her with the waiver form within 3 days of this order and she must execute it and return it to them within 6 days of this order." (ECF No. 107) (emphasis added). The Court has not previously ordered the plaintiff to provide any authorization for the release of any DCF information beyond the written finding of neglect, nor has it previously ordered the plaintiff to authorize a deposition of Ms. Builes.

This does not mean that the Court should not enter such an order now, however. To determine whether it should do so, the Court examines each of the plaintiff's other arguments in turn.

As noted, the plaintiff's principal argument is her claim that "DCF records are confidential and privileged pursuant to Connecticut State law and Federal statutes" and therefore immune from discovery. (ECF No. 116, at 2-3.) And to be sure, several state and federal courts have refused to grant motions to compel disclosure of DCF records or deposition testimony from DCF investigators. *See, e.g., Love v. Moynihan,* No. HHD-CV15-6059776-S, 2018 WL 794036, at *2 (Conn. Super. Ct. Jan. 17, 2018); *Giesing v. Blefeld,* No. 549307, 2001 WL 56437, at *1 (Conn. Super. Ct. Jan. 4, 2001); *Stancuna v. Iovene,* No. 3:08-cv-00030 (JBA), 2016 WL 11589753, at *5 (D. Conn. Nov. 21, 2016). Other courts have ordered disclosure, however – and indeed, in *Fox v. Smolicz* the court issued an order exactly like the one the police officers seek here. No. 3:02-cv-1202 (GLG), 2004 WL 1144096, at *3 (D. Conn. Apr. 30, 2004) ("With regard to the disclosure of . . . DCF records, the Court has considered plaintiff's concerns and finds his objections to be unfounded. Accordingly, it is hereby ordered that [the parent] . . . provide written consent for the disclosure of the DCF records to defendants.").

Most importantly, the plaintiff's argument has been rejected in this very case. In the context of the officers' request for disclosure of the written finding of neglect, Judge Shea held that "[t]he fact that any such material might otherwise be protected by Conn. Gen. Stat. 17a-28 does not prevent this Court from ordering the plaintiff to produce it in discovery and is certainly not a basis, given that the Court has ordered disclosure, for the Plaintiff to continue to withhold any such material in her possession." (ECF No. 107.) This Court observes no reason to conclude that these principles are any less applicable to Ms. Builes' anticipated deposition testimony than

they were to the written finding of neglect, and the plaintiff's opposition papers do not offer any such reason.

The plaintiff next argues that the officers can obtain the same information through other, less intrusive means. (ECF No. 116, at 3-4.) The officers seek Ms. Builes' "impressions of the plaintiff," among other things (ECF No. 112-1, at 5), and during the discovery teleconference they contended that Ms. Builes was at the plaintiff's home at the same time as Officer Cipolla and may have relevant testimony on how he conducted himself – and, in particular, may be able to testify that she did not observe him stealing any money or jewelry. The plaintiff points out that Officer Cipolla's colleague, Officer Diane MacLean, was also at the home at the same time, and she argues that the officers can get from Officer MacLean the same testimony they seek from Ms. Builes. (ECF No. 116, at 3-4.) The plaintiff previously alleged, however, that substantially the entire Wilton Police Department is engaged in "a pattern of unconstitutional conduct." (Compl., ECF No. 1, ¶¶ 101-09.) Although that claim is now dismissed (ECF No. 79), presumably the plaintiff would attempt to impeach Officer MacLean at trial on the ground that she and Officer Cipolla are both part of the same "conspiracy to violate plaintiff's civil rights." (ECF No. 1, at 21.) Under these circumstances, a deposition of Officer MacLean is not a reasonable substitute for the deposition of the ostensibly disinterested social worker.

The plaintiff also argues that Ms. Builes' testimony is irrelevant (ECF No. 116, at 4), but the Court disagrees. "'Relevance' under Federal Rule of Civil Procedure 26(b)(1) has been construed broadly to include 'any matters that bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Cole v. Towers Perrin Forster & Crosby,* 256 F.R.D. 79, 80 (D. Conn. 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978)). "The party resisting discovery bears the burden of showing why discovery should be

denied." *Id.* (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975)).  Applied to this case, these principles mean that to avoid discovery on grounds of irrelevance, the plaintiff must show that the Ms. Builes has no information bearing on any issue that is or may be part of the case.  She has not done so.

To begin with, Judge Shea has previously ruled that the written finding of neglect is relevant for discovery purposes (ECF No. 107), and the undersigned sees no reason why Ms. Builes' contemporaneous impressions of the plaintiff and any first-hand observations of Officer Cipolla's conduct would be any less relevant than the written finding.  As someone who was present in the plaintiff's home on April 29, 2015, Ms. Builes may have relevant testimony on any number of disputed topics.  For example, the parties dispute whether the plaintiff's conduct justified the level of force that the officers applied to her, and the plaintiff alleges that Officer Cipolla stole money and jewelry from her home.  As someone who was at the home that day, Ms. Builes may have relevant testimony about these and other contested issues.  In short, Ms. Builes' testimony is relevant within the meaning of Rule 26(b)(1), and the Court rejects the plaintiff's claim to the contrary.

One final issue remains to be addressed.  The officers brought Motion 112 on January 22, 2020, only nine days before the close of an eighteen-month discovery period, and this timing naturally leads to questions about their diligence.  In contrast to the depositions of the plaintiff's children and disclosed medical providers, however, the Court concludes that the officers have pursued this line of inquiry in a reasonably diligent manner.  They explored it at the plaintiff's deposition last fall (*see* ECF No. 96-2); when the plaintiff declined to produce the written finding,

they raised the issue with the Court within a few weeks (*id.*);[6] and they filed Motion 112 within days of reaching impasse with the plaintiff and DCF. (*See* ECF No. 112-1, at 2-3) (describing efforts). These are reasonably diligent efforts, and accordingly the officers are not precluded from pursuing Ms. Builes' deposition.

### 3. Conclusion

As detailed above, Motions 108 and 110 are granted in part and denied in part. They are denied to the extent that they seek leave to depose the plaintiff's children beyond the February 1, 2020 discovery deadline. They are also denied to the extent that they seek leave to depose any medical provider that the plaintiff identified, and for whom the plaintiff provided a complete medical record or a signed authorization to obtain one, before January 14, 2020. Motions 108 and 110 are granted only to the limited extent that they seek leave to depose medical providers who were not identified, or for whom a complete medical record or authorization was not produced, before January 14, 2020. It is hereby **ORDERED** that the scheduling order is amended to that limited extent.

Motion 112 is granted. The plaintiff is **ORDERED** to provide the defendants with an authorization sufficient to permit the contemplated deposition of Ms. Builes by 5:00 p.m. on Friday, February 7, 2020. The defendants shall have until February 28, 2020 to complete the deposition, and the scheduling order is **ORDERED** amended to this limited extent. All other

---

[6] In her "Addendum to Plaintiff's Opposition to Motion to Compel" (ECF No. 118), the plaintiff alleges that the officers' counsel secured the Court's order for the earlier authorization by misrepresenting that the plaintiff agreed to it. The Court has considered this allegation and concludes that it has no bearing on Motion 112.

In a third submission, the plaintiff alleged that the officers' counsel violated her rights by communicating with DCF's attorney. (ECF No. 123, at 3.) The Court has considered this allegation as well, and likewise concludes that it has no bearing on the outcome of the motion.

scheduling order deadlines remain unaffected by this Ruling, including but not limited to the March 30, 2020 deadline for dispositive motions. As Judge Shea did with the written finding of neglect, this Court orders that Ms. Builes' deposition testimony be accorded "CONFIDENTIAL – FOR ATTORNEYS' EYES ONLY" treatment under the Standing Protective Order. (ECF No. 6.)

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge in response to a timely objection under Local Rule 72.2(a).

Dated at Hartford, Connecticut this 5th day of February, 2020.

*/s/ Thomas O. Farrish*
Thomas O. Farrish
United States Magistrate Judge