UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NEELU PAL, | : | CIV. NO.3:18cv-00616(MPS) |
|     Plaintiff, | : | |
| vs. | : | |
| | : | |
| ROBERT CIPOLLA, ROBERT SMALDONE, | : | |
| MICHAEL TYLER, SCOTT SEAR, | : | |
| DANIEL MONAHAN, RICHARD JANES, | : | |
| TOWN OF WILTON, DOE DEFENDANTS A-X; | : | APRIL 9, 2020 |
|     Defendants. | | |

**DANIEL MONAHAN AND RICHARD JANES'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.     PRELIMINARY STATEMENT**

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local District Rule 56(a)1, the defendants, Daniel Monahan and Richard Janes (hereinafter the "EMS defendants"), respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment.

The plaintiff, Neelu Pal ("plaintiff"), has made several allegations against all defendants in this case, but it is unclear from the structure of her Amended Complaint exactly which counts are alleged against the EMS defendants. A reading of the alleged factual basis of the Plaintiff's Amended Complaint, however, makes clear that she is only making three state law based claims against the EMS defendants: assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. To the extent that the Plaintiff's Amended Complaint is read to apply her Federal Law claims and any of the other state claims against the EMS defendants, the EMS defendants expressly adopt the arguments made in the Motion for Summary Judgment filed by the co-defendants, Robert Cipolla, Robert Smaldone, Michael Tyler, Scott Sear, and the Town of Wilton, and the arguments made therein are expressly incorporated herein by reference.

1

## II.     FACTUAL BACKGROUND

On April 29, 2015, the EMS defendants were EMTs employed by Norwalk Hospital. [Statement at ¶1]. On April 29, 2015, the EMS defendants were serving as members of the Town of Wilton EMS. [Statement in Support at ¶2]. On April 29, 2015, the EMS defendants were dispatched for "ETOH Intox" to a residence located at 285 Sturges Road in Wilton, CT, which they have since learned was the residence of the plaintiff, Neelu Pal (the "Plaintiff"). [Statement in Support at ¶3]. The EMS defendants were dispatched at 2:22 and arrived at the Plaintiff's residence at 2:33. [Statement in Support at ¶4]. Initially, Daniel Monahan was driving Unit 511 when the EMS defendants arrived at the Plaintiff's residence. [Statement in Support at ¶5]. Upon arrival at the Plaintiff's residence, the Plaintiff was handcuffed in the back of a police car and was screaming. [Statement in Support at ¶6]. The Plaintiff refused to answer questions pertaining to her history of present illness or medical history and all attempts to interview her were met with aggression and belligerence. [Statement in Support at ¶7].

The police advised the EMS defendants that the Plaintiff was under arrest and needed medical evaluation. [Statement in Support at ¶8]. The Plaintiff continued to be aggressive and combative with both EMS and the police. [Statement in Support at ¶9]. The police reported a smell of ETOH. [Statement in Support at ¶10]. The Plaintiff's behavior was deemed to be a danger to herself and others. [Statement in Support at ¶11]. At 2:38, the Plaintiff was removed from the police car and her handcuffs were moved from behind her to the front by the police. [Statement in Support at ¶12]. The Plaintiff was secured to the stretcher and moved to an ambulance. [Statement in Support at ¶13]. Richard Janes initially observed the Plaintiff from outside the rear of the ambulance as she was being treated, but at no time did he enter the back of

the ambulance. [Statement in Support at ¶14]. Thereafter, Richard Janes remained the driver of the ambulance and did not leave the driver's seat. [Statement in Support at ¶15].

A police officer remained on board and assessment of the Plaintiff continued enroute. [Statement in Support at ¶16]. The Plaintiff continued to be uncooperative and belligerent. [Statement in Support at ¶17]. At 2:46, attempts to obtain vital signs and cbg were met with violence. [Statement in Support at ¶18]. Both the EMS and police tried multiple times to verbally de-escalate with no success. [Statement in Support at ¶19]. A note from 2:50 indicates that the Plaintiff became increasingly combative and the EMS driver called for a medic 500 intercept. [Statement in Support at ¶20]. The Plaintiff attempted to bite the police officer's cheek and began to kick the EMS crew. [Statement in Support at ¶21]. The Plaintiff's lower extremities were restrained to a stretcher with soft restraints. [Statement in Support at ¶22]. At 2:57, the Plaintiff began to comply and was no longer combative. [Statement in Support at ¶23]. The medic arrived, but was cancelled by the EMS. [Statement in Support at ¶24]. At 3:00, the Norwalk emergency department was advised of an incoming combative patient and at 3:10, the Plaintiff was noted as being uncooperative again. [Statement in Support at ¶25]. At 3:12, the Plaintiff was transferred to the care of the Norwalk ED and a report was given to Chris C. and Dr. Hammel. [Statement in Support at ¶26]. The Plaintiff's restraints were removed, there was no injury noted, and distal pulses were present prior to and after removal. [Statement in Support at ¶27].

The EMS run report for Unit 511, the vehicle driven and operated by the EMS defendants, demonstrates that this was the vehicle involved in the transport of Neelu Pal on April 29, 2015. [Statement in Support at ¶28]. According to the EMS report for Unit 511, Richard Janes was the driver of Unit 511 and Daniel Monahan was the primary care giver operating in

Unit 511.  [Statement in Support at ¶29].  Unit 511 is a basic EMS vehicle and it does not come equipped with any sedatives or other narcotics nor can any such substances be carried on board.  [Statement in Support at ¶30].  The Certificate of Operation-Renewal for the Wilton Volunteer Ambulance Corps indicated that the Wilton Volunteer Ambulance Corps has two licensed vehicles, both classified as BASL, which denotes a basic EMS vehicle.  [Statement in Support at ¶31].  These two vehicles were given a marker number of 2341 and 2692.  [Statement in Support at ¶32].  Marker number 2341 refers to Unit 511 and marker number 2692 refers to Unit 512.  [Statement in Support at ¶33].  The State of Connecticut Department of Public Health's EMS Vehicle Equipment Lists delineates in pages 2-8 the equipment that is present within a basic EMS vehicle such as unit 511, which does not include any sedatives or other narcotics.  [Statement in Support at ¶34].  Accordingly, there were no sedatives or other narcotics or any similar substances available to the EMS defendants, or any other person in Unit 511 while transporting Ms. Pal in this vehicle.  [Statement in Support at ¶35].  The EMS defendants did not have any sedatives or other narcotics or any similar substances on their person from another source.  [Statement in Support at ¶36].

At no time on April 29, 2015 did the EMS defendants engage in unlawful, egregious, wanton and/or malicious acts.  [Statement in Support at ¶37].  At no time on April 29, 2015 did the EMS defendants forcibly imprison the Plaintiff in the back of an EMS vehicle.  [Statement in Support at ¶38].  Daniel Monahan may have removed a jacket or sweatshirt from the Plaintiff, but did not remove any other portions of the Plaintiff's clothing at any time.  [Statement in Support at ¶39].  The EMS defendants did not physical assault the Plaintiff at any time.  [Statement in Support at ¶40].  The EMS defendants did not sexually assault the Plaintiff at any time.  [Statement in Support at ¶41].

The EMS defendants did not inject the Plaintiff with any substance at any time and did not inject the medial aspect of the Plaintiff's right arm as she alleges. [Statement in Support at ¶42]. Officer Robert Smaldone, who was the Wilton Police Officer present in the back of the ambulance with Daniel Monahan, did not witness any assault of the plaintiff. [Statement in Support at ¶43]. The Plaintiff testified that Robert Smaldone was always present in the rear cabin of the ambulance. [Statement in Support at ¶44].

The Plaintiff could not identify which of the EMS defendants allegedly injected her arm. [Statement in Support at ¶46]. The Plaintiff could not identify which of the EMS defendants allegedly sexually assaulted her. [Statement in Support at ¶47]. The Plaintiff testified that she did not see the alleged injection into her arm. [Statement in Support at ¶48]. Dr. Hammel treated the Plaintiff at Norwalk Hospital and the Plaintiff made no report of any sexual assault. The affidavit that Daniel Monahan created as part of the criminal case was true and correct in all respects. [Statement in Support at ¶45].

The Plaintiff's initial complaint filed April 10, 2018, was directed at Captain Robert Cipolla, Officer Robert Smaldone, Officer Michael Tyler, and Officer Scott Sear of the Wilton Police Department ("WPD"), the Town of Wilton, and Daniel Monahan and Richard Janes of the Wilton Volunteer Ambulance Corp. ("WVA"). On April 21, 2018, Attorney William Palmieri appeared on behalf of the Plaintiff [Doc. 16]. On July 17, 2018, the Plaintiff filed an amended complaint [Doc. 35]. Pursuant to an order from the Court [Doc. 48], the Plaintiff filed a second amended complaint on October 30, 2018 [Doc. 49].

Attorney William Palmieri filed a motion to withdraw as attorney for the plaintiff on March 13, 2019 [Doc. 61], which was granted on April 2, 2019 [Doc. 65]. The plaintiff filed a pro-se appearance on April 15, 2019 [Doc. 69].

### III. LEGAL ARGUMENT

#### A. Summary Judgment Standard

A motion for summary judgment should be granted if there is no genuine issue of material fact to be tried and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); see generally Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970); Cronin, 46 F.3d at 202.

"Mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985). Instead, "the plaintiff must offer concrete evidence raising genuine disputes of material fact tending to show that his version of events is more than fanciful," and "may not rely on conclusory allegations or unsubstantiated speculation." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005); Johnson v. Carpenter Technology Corp., 723 F.Supp. 180, 182 (D. Conn. 1989). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

At the summary judgment stage, facts must be viewed in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007). However, when a plaintiff's story is blatantly contradicted by the record, including video evidence, the court should not adopt plaintiff's version of the facts for the purposes of ruling on a motion for summary judgment. Id.

## B. There Is No Genuine Issue of Material Fact as to the Plaintiff's Assault and Battery Claim Against the EMS Defendants.

In the civil context, a "battery is a harmful or offensive contact with the person of another." Conn. Civil Jury Instructions §3.13-2. "An assault is an act that causes another person to be placed in imminent apprehension of a harmful or offensive contact with that person." Id. § 3.13-1. Thus, plaintiff "must prove that defendants applied force or violence to [her] and that the application of force or violence was unlawful." Conroy v. Caron, 275 F. Supp. 3d 328, 356 (D. Conn. 2017) (quoting Odom v. Matteo, 772 F. Supp. 2d 377, 395 (D. Conn. 2011)).

It appears that the Plaintiff's assault and battery claim, at least in part, is based on the allegation that one of the EMS defendants injected her in the medial aspect of her right arm with a substance. [Plaintiff's Complaint at ¶31]. As an initial matter, the Plaintiff was unable to testify as to which of the EMS defendants actually performed this injection. Richard Janes never entered into the rear cabin of the ambulance and only drove the ambulance once the Plaintiff was restrained and placed into the ambulance. As such, any claim against him should summarily be dismissed.

With respect to both EMS defendants, however, the EMS vehicle that the EMS defendants were operating, Unit 511, to care for and transport the Plaintiff to Norwalk Hospital did not contain any sedatives or other narcotics or any similar substances. Neither EMS defendant had any narcotics or other substances on their person from another source. As such, neither EMS defendant could have injected the Plaintiff with any substance.

To the extent Plaintiff's claims for assault and battery is premised on the alleged sexual assault in the back of the ambulance, the claim cannot be attributable to Richard Janes as, again, he was never in the rear cabin of the ambulance when the Plaintiff was in the ambulance and he

7

only drove the ambulance to Norwalk Hospital. Daniel Monahan did not sexually assault the Plaintiff. The Plaintiff was entirely unable to identify which of the EMS defendants allegedly sexually assaulted her. More importantly, Officer Smaldone, who was the Wilton police officer who was present in the back of the ambulance with Daniel Monahan, did not witness any assault of any kind. The Plaintiff admitted that Officer Smaldone was always in the rear of the ambulance during her transport. The Plaintiff also never reported any sexual assault when she was evaluated by Dr. Hammel at Norwalk Hospital. [See Exhibit W of Town of Wilton's Motion].

Given all of above, there is no genuine issue of material fact on the Plaintiff's assault and battery claim against either EMS defendant and, as such, the Plaintiff's claims in this regard must be dismissed.

### C. Plaintiff's Negligent Infliction Of Emotional Distress Claim Must Fail

To prevail on a claim for negligent infliction of emotional distress ("NIED"), the plaintiff is required to prove that "(1) the defendant's conduct created an unreasonable risk of cause the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003). Not only has plaintiff failed to submit admissible evidence or damages to make out the essential elements of a NIED claim, but the EMS defendants' actions were entirely reasonable and cannot give rise to such a claim as lawful EMS work cannot properly support an intentional tort.

In Brooks v. Sweeney, 299 Conn. 196 (2010), the Connecticut Supreme Court held that "although being arrested and subject to prosecution may have been traumatic to the plaintiff, enforcement of the law can hardly be called conduct beyond the acceptable bounds of decent

8

society. Subjecting a government official or employee to litigation for [the intentional] infliction of emotional distress arising from a valid arrest would be contrary to public policy and inhibit the enforcement of the law." 299 Conn. at 205–06.  The same public policy considerations underlying this finding also come into play when transporting the Plaintiff to the hospital under an emergency examination request when she was undisputedly intoxicated cannot give rise to an emotional distress claim.  Therefore, the Plaintiff's NIED claim must fail.

### D. Plaintiff's Intentional Infliction Of Emotional Distress Claim Is Legally Insufficient

To prevail on a claim for intentional infliction of emotional distress ("IIED") under Connecticut law, a plaintiff must prove:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

Watts v. Chittenden, 301 Conn. 575, 586 (2011) (quoting Appleton v. Bd. of Educ., 254 Conn. 205, 210 (2000)).  Since the valid arrest and medical transport at issue cannot give rise to emotional distress liability, judgment in these defendants' favor is warranted.

Plaintiff's claim cannot withstand this motion for the additional reason that she cannot establish that the EMS defendants harbored the requisite intent.  It is well established that an IIED claim "requires some showing of an intent to cause emotional harm." Abdella v. O'Toole, 343 F. Supp. 2d 129, 140 (D. Conn. 2004).  In fact, "[i]t is the intent to cause injury that is the gravamen of the tort." DeLaurentis v. New Haven, 220 Conn. 225, 266–67 (1991) (citing Hustler Magazine v. Falwell, 485 U.S. 46, 53 (1988)).

On the undisputed record, these defendants did not intend to inflict emotional distress.  The EMS defendants were simply providing medical treatment to the Plaintiff at the request of

the Wilton Police Department. The Plaintiff's actions clearly demonstrate that she required medical care given her conduct at her home. As such, the EMS defendants are entitled to summary judgment as plaintiff cannot prevail on her intentional infliction of emotional distress claim.

## IV.  CONCLUSION

For all the foregoing reasons the EMS defendants, Daniel Monahan and Richard Janes, respectfully request that the Court grant their motion for summary judgment as to all claims asserted against them by the plaintiff.

> THE DEFENDANTS
> DANIEL MONAHAN
> RICHARD JANES
>
> BY:   /s/ Patrick M. Mullins
>           Patrick M. Mullins (ct 13200)
>           COTTER, COTTER & MULLINS, LLC
>           6515 Main Street
>           Second Floor, Suite 10
>           Trumbull, CT 06611
>           Telephone: (203) 331-0774
>           pmullins@ccmvlaw.com

## CERTIFICATION

I hereby certify that on April 9, 2020, a copy of the foregoing was filed electronically and served by mail and/or e-mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.

Parties may access this filing through the Court's system.

/s/ Patrick M. Mullins
Patrick M. Mullins