## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| NEELU PAL,<br><br> *Plaintiff*,<br><br> v.<br><br> ROBERT CIPOLLA, ROBERT SMALDONE,<br>MICHAEL TYLER, DANIEL MONAHAN, and<br>RICHARD JANES.,<br><br> *Defendants*. | No. 3:18-cv-00616-MPS |

### RULING ON MOTION TO DISMISS UNDER RULE 41(b)

**I.      INTRODUCTION**

On May 22, 2024, jury selection in this six-year-old lawsuit occurred, and the *pro se*

plaintiff, Neelu Pal, began to present evidence.  But on each of the next two days, May 23 and

24, 2024, Ms. Pal failed to appear for trial, despite court orders requiring her to appear.  This

behavior formed part of a well-worn pattern in this case.  And so due to her repeated failure to

appear for trial and abide by this Court's orders, I granted from the bench the Defendants' oral

motion to dismiss under Rule 41(b).  I briefly stated my rationale on the record at the time but

also stated that a full explanation of the dismissal ruling would follow.  This is that explanation.

**II.      PERTINENT PROCEDURAL HISTORY**

*The Plaintiff's Claims*

This case has a long and tortuous history, and I will recount only the relevant parts here.

Ms. Pal filed this civil rights action against Wilton, Connecticut police officers and emergency

medical technicians ("EMTs") on April 10, 2018.  ECF No. 1.  She claimed that the officers

arrived at her house on April 29, 2015, after she had made 911 calls, and that they illegally

entered her home, falsely arrested her, and used excessive force against her.  *See generally* ECF No. 49.

The officers summoned an ambulance to the home, believing that Ms. Pal was intoxicated and behaving irrationally and determining that she should undergo a psychiatric evaluation at a hospital under Conn. Gen. Stat. Sec. 17a-503.  *See* ECF No. 152-2 at ¶ 39.  Ms. Pal was placed in the ambulance and driven to the hospital.  She claimed that in the ambulance, a police officer and an EMT sexually assaulted her; the officer and the EMT claimed that Ms. Pal had assaulted and attempted to assault them.  *See* ECF No. 193 at 31–35, 38–40.

Ms. Pal was brought to Norwalk Hospital and checked herself out later that same day.  *Id.* at 15.  Eventually, Ms. Pal was prosecuted in state court on various charges, including misuse of a 911 line and assault and attempted assault on a police officer and EMT.  *Id.* at 16–18.  Shortly before trial in the state court prosecution, the prosecutor stated that, after reviewing Ms. Pal's hospital records, she had concerns about her ability to prove Ms. Pal's specific intent as to certain charges, dropped those charges, and ultimately prosecuted Ms. Pal for creating a public disturbance in violation of Conn. Gen. Stat. Sec. 53a-181a(a)(3), an infraction on which Ms. Pal was convicted after a bench trial.  *Id.*  Ms. Pal also claimed in this lawsuit that one of the officer defendants and one of the EMT defendants maliciously prosecuted her on the assault/attempted assault charges, and that another officer stole items from her home after she had left in the ambulance.  ECF No. 49 at ¶¶ 58, 106–113.

*Acrimonious Litigation*

Although Ms. Pal filed this case with counsel, within the first year of the case, I allowed her lawyer to withdraw, and, since then, she has been litigating the case *pro se*.  ECF No. 65.  To call the ensuing five years of litigation unusually acrimonious would be an understatement.

Within four months of filing her *pro se* appearance, Ms. Pal filed a motion to be allowed to testify at her deposition remotely (well before the beginning of the COVID-19 pandemic), claiming that she feared for her safety because, on "information and belief," two of the defendants "planned on further threatening, intimidating and injuring me and my family and minor children, in order to prevent me from continuing with prosecuting" the case.  ECF No. 82 at 2.  The case went downhill from there, with Ms. Pal filing two motions to disqualify defense counsel, ECF No. 91; ECF No. 447, and multiple motions for sanctions against defense counsel, *see, e.g.*, ECF No. 305; ECF No. 315; ECF No. 346; ECF No. 444; ECF No. 429; *see also* ECF No. 228, and the defendants filing multiple motions for sanctions against Ms. Pal, *see, e.g.*, ECF No. 291; ECF No. 402; ECF No. 437; ECF No. 488.[1]

Ms. Pal failed to comply with my orders on several occasions, and I had to issue a collection of orders compelling compliance, requiring Ms. Pal to show cause why I should not sanction her, actually imposing financial sanctions on her on one occasion, and invoking the possibility that I would impose further sanctions.  *See, e.g.*, ECF No. 48; ECF No. 53; ECF No. 107; ECF No. 311; ECF No. 312; ECF No. 317; ECF No. 354; ECF No. 392; ECF No. 397; ECF No. 404.  At this point, the docket weighs in at nearly 500 entries.

*Earlier Attempts to Try the Case*

I first scheduled this case for jury selection and trial to begin on January 18, 2023—later rescheduled to January 20, 2023—with the first pretrial conference to be held on January 9, 2023.  ECF No. 216, ECF No. 227.  On January 9, 2023, Ms. Pal filed a motion to hold the conference remotely, reporting that she had recently tested positive for COVID-19 and was

---

[1] In this case and a related case, Ms. Pal has also filed two motions to recuse me, my law clerk, and the magistrate judge assigned to the related case.  *See* ECF No. 314; *Pal v. Canepari*, No. 20-CV-00013, ECF No. 132 (Mar. 21, 2021).

symptomatic.  ECF No. 237.  I granted the motion and held the conference over Zoom.  As I have detailed in a previous ruling, which I incorporate herein by reference, Ms. Pal was coughing frequently during the pretrial conference but appeared to be considerably better, displaying few if any symptoms, at a second Zoom pretrial conference held on January 11, 2023.  *See* ECF No. 311 at 3.  No one suggested during the pretrial conferences or in the nine days between the second pretrial conference and the date of jury selection that there was a need to reschedule the jury selection or trial.

On January 20, the prospective jurors arrived at the courthouse for jury selection, and the parties, defense counsel, court staff, and I convened in the courtroom.  After some preliminary discussion—immediately before I was going to ask court staff to bring the venire to the courtroom—, Ms. Pal, who was then coughing, reported that she had tested positive for COVID-19.  *See* ECF No. 311 at 3–4.  After questioning, she reported that she had tested positive the previous day.  At no time before arriving at court had Ms. Pal—who is a licensed medical doctor and who also attended law school for a time—informed the Court or defense counsel of her positive test result or the renewal of the symptoms she had shown on January 9.  Defense counsel immediately moved to dismiss the case, arguing that Ms. Pal had wasted time and expense and had unnecessarily exposed those in the courtroom to COVID-19.

I ultimately denied the defendants' motion to dismiss in a written ruling but did impose a narrower sanction.  *See* ECF No. 311.  Specifically, I found that Ms. Pal should have notified the Court and defense counsel of her positive test and symptoms on the morning of January 19 (as she had on January 9) and ordered her to reimburse the Court for the prospective jurors' mileage expenses and the defendants for the attorney's fees and expenses they incurred on the afternoon and evening of January 19.  *See id.* at 2–3 (finding that "[t]here was no reasonable excuse for the

plaintiff's failure to take the basic step of notifying the Court and counsel" and that "the plaintiff's failure caused court personnel, prospective jurors, defense counsel, and the defendants unnecessary time and expense"); *see also* ECF No. 354; ECF No. 355.  After several more motions by the defendants and orders by me compelling compliance and invoking the possibility of further sanctions, Ms. Pal paid these amounts.  *See, e.g.,* ECF No. 404; ECF No. 407.

In the meantime, I rescheduled the trial for October 4, 2023.  *See* ECF No. 299; ECF No. 301; ECF No. 302.  On September 28, 2023, however, Ms. Pal reported that she had tested positive for COVID-19 the previous day.  ECF No. 363 at 2.  I ordered that she take further tests and continue to report the results.  ECF No. 366.  On October 3, 2023, I held a telephonic status conference with the parties.  *See* ECF No. 385.  During the call, Ms. Pal's voice sounded very weak, and she reported that she was experiencing symptoms and that her symptoms were recurrent, although she added that no doctor had provided her with a diagnosis.  After I asked whether she thought she would be better in a few months, she stated that she had not felt well since receiving the COVID-19 vaccine and that "I don't know whether I will be prepared, ever be prepared enough" to try the case.  I stated that I did not want to begin the trial only to have her report that she was too sick to continue.  After listening to Ms. Pal for more than 45 minutes and noting that that she sounded sick, I determined that the trial had, again, to be rescheduled.  *Id.*  I conferred with the parties about suitable dates and ultimately selected April 17, 2024 for the date of jury selection and trial.  *Id.*; ECF No. 387.

In early March 2024, counsel for the ambulance defendants filed a motion to continue the trial, citing vacation plans.  ECF No. 413.  I denied the motion, citing the fact that I had scheduled the date five months earlier after receiving input from all parties and counsel, that I had already rescheduled the trial twice, and that the case was old.  The same defense lawyer filed

a motion to reconsider, which I denied without prejudice, indicating that counsel could renew his motion if he could secure agreement from all parties to begin the trial on one of three dates I provided.  ECF No. 417; ECF No. 419.  Ms. Pal then filed a motion "to set trial date order" asking that the Court set the trial for one of the dates I had offered, which included May 22, 2024.  ECF No. 418.  On March 27, 2024, I rescheduled the jury selection and trial to begin on May 22.

### New Lawsuit and May 10, 2024 pretrial conference

On April 30, 2024, Ms. Pal filed a new lawsuit (her fourth in this Court), this time against the lawyers representing the Wilton police officers and their law firm as well as two state prosecutors and an investigator whom she had identified as witnesses in this case.  *See* Complaint, *Pal v. Tallberg*, No. 24-CV-00792 (Apr. 30, 2024).  Her complaint in that case alleges that the prosecutors failed to investigate her allegations of assault against the Wilton police officers—the same allegations she makes in this lawsuit—and that the lawyers had filed in this case a letter from one of the prosecutors, one she never received, stating that the prosecutor had found her allegations baseless.  *Id.*  The letter referred to had been attached to a reply brief filed by the defendants in this case in support of their motion to dismiss following the failed January 20 jury selection.  *See* ECF No. 296; ECF No. 296-1.  I had addressed the letter in a ruling denying Ms. Pal's motion for sanctions and finding that motion frivolous.  ECF No. 312. The new lawsuit accused the defendants of, among other things, conspiring to violate her civil rights and "fraudulent concealment."  *See* Complaint, *Pal v. Tallberg*, No. 24-CV-00792, at *28. Defense counsel for the Wilton police defendants filed a motion to dismiss this case (not the new case) under Rule 41(b), arguing that Ms. Pal had filed the new complaint to "vex and harass counsel on the eve of trial."  ECF No. 437-1 at 2.

On May 10, 2024, I held a status conference to review my earlier evidentiary rulings and remind the parties of procedures concerning jury selection and trial. During the status conference, I made clear that this case would be tried regardless of the new complaint. ECF No. 450 at 73 ("[L]et me be very clear. We're trying this case, and I'm not dismissing anything right now."). In response, Ms. Pal, who spoke in a clear voice and showed no signs of the symptoms she had displayed in the October 3 telephone conference, argued that the filing of the new lawsuit created a conflict for the police officers' defense lawyers. Her theory apparently was that those lawyers would not be able to question one of the prosecutor defendants in the new case because that prosecutor was expected to be a witness at the trial in this case. *See id.* at 75 (Ms. Pal asking: "[A]re you saying that it's perfectly acceptable for attorneys to be co-defendants with a witness in this matter?"), 76 (Ms. Pal discussing a "motion asking Attorney Tallberg and his law firm to recuse themselves"). I stated that I did not see how that necessarily created a conflict. After the pretrial conference, Ms. Pal filed a motion to disqualify defense counsel for the Wilton police defendants, ECF No. 447, which I denied, ECF No. 455.

### *May 22, 2024 Trial and Plaintiff's Absence on May 23*

The parties appeared for jury selection on May 22, and we selected a jury. Ms. Pal called herself as her first witness and completed part of her direct examination before the end of the trial day. After the jurors left, I discussed with the parties and counsel the arrangements for the next day and reminded them that they had to be seated in the courtroom at 9:15 AM, as proceedings before the jury would resume at 9:30 AM. The next day, the defendants, defense counsel, and the jurors arrived for trial at the specified times. Ms. Pal, however, did not appear. Nor had she filed anything on the docket indicating she would not appear. I instructed court staff to contact Ms. Pal by email and by telephone, which they did, receiving no responses. *See* ECF

No. 486.  The courtroom deputy reported, however, that while she was in the courtroom, Ms. Pal

had left her a voicemail—at 9:27 AM—stating that she was in the emergency room at an

unspecified hospital.  I then took the bench to place these facts on the record and sent the jurors

home with instructions to return at the usual time the next day, May 24.  I also issued an order on

the docket requiring Ms. Pal to "provide further information about the situation, her

whereabouts, and her availability to appear timely in court tomorrow and for the remainder of the

trial," and to file, under seal, medical records reflecting her visit to the hospital.  ECF No. 486.

      At my instructions, court staff continued to try to reach Ms. Pal but were unable to do so.

Using the number from which Ms. Pal had left a voicemail, the courtroom deputy learned that

Ms. Pal had called from Midstate Hospital in Meriden, Connecticut, and the hospital confirmed

that Ms. Pal was there and later confirmed that she had been discharged at about 11:00 AM.  I

issued another order directing Ms. Pal to contact the Court to provide information about the

circumstances of her absence, her condition, and her ability to attend trial.  ECF No. 487.  At

1:00 PM, Ms. Pal sent my law clerk the following email:

> I just got back from the hospital.  Unfortunately I don't feel well enough to continue
> trial immediately.  Considering the timing and circumstances of the accident, I am
> worried about my own safety, but even more so the safety of my daughter who was
> to testify later today.  I will file a motion requesting that the Court stay this matter
> until there is some clarity on the identity of the driver of the other car caused the
> crash [sic].  I will follow the Court's orders/decisions on the motion to stay trial.

ECF No. 489.  She also telephoned a member of the Clerk's Office staff, repeating in substance

the content of the email and also stating that there had been a car crash involving another driver,

that her car had been totaled, and that a firetruck and "the FBI"—*i.e.,* the Federal Bureau of

Investigation—had been on the scene.

      I issued an order requiring Ms. Pal to file a police report relating to the accident,

reiterated my order that she file medical records, and added an order requiring her to file

"**whatever records of the crash she currently has and whatever hospital records she currently has by 5:00 PM today**," noting that she could file the remaining records when they became available.  ECF No. 489 (emphasis in original).  I added that I would not grant a motion to stay at that point, that the jurors had been instructed to report at the usual time, that I would review any motion to stay that Ms. Pal filed but that Ms. Pal had to report to court at 8:30 AM on May 24 so that I could question her about the circumstances of her absence.  *Id.*  I also noted that "[a]ny failure to appear may result in sanctions, up to and including dismissal."  *Id.*

At 2:54 PM, Ms. Pal filed a response to my orders also entitled "motion to stay or continue the trial date" or "declare a mistrial."  ECF No. 491.  In this filing Ms. Pal claimed that at 8:15 AM, a vehicle "driving at a very high speed [had] swerved in front of my car" and either "struck" her car "or [she] reflexively swerved to avoid a collision [and] crashed into a guard rail."  ECF No. 491 at 1.  She also alleged that "[t]his vehicle swerving in front of my car at a very high speed appeared to be intentional [sic] because I had noticed the same vehicle tailing me for a long time."  *Id.*  She also represented that she had spoken to a police officer at the scene and "was taken via ambulance to the nearest hospital," where she "underwent CT scans of the head and neck."  *Id.*  She stated that her car, "which had many of the Court exhibits and documents . . . inside, was towed from the scene . . . ."  *Id.*  Finally, Ms. Pal stated that she had "extreme head and neck pain and extremely high blood pressure" and did not "feel [she could] safely appear in Court and continue with the trial tomorrow."  *Id.* at 2.  The filing did not specify on which road or in which town the accident occurred; the type or color of car the other driver was driving; the name or municipal department of the police officer; the name of the ambulance

company or the municipality with which it was associated; or whether she had received any medical diagnosis.  The filing did not mention a firetruck or the FBI.[2]

After reviewing this filing, I issued an order stating that I would not stay the trial "at this time," and again ordered the parties to appear in court at 8:30 AM.  ECF No. 492.  I then issued another order requiring Ms. Pal to file on the docket by 6:00 PM "any documents she has reflecting the towing or other handling or disposition of her vehicle" and any other documents evidencing the events described in her filing, including even the business card of the police officer who she claimed spoke to her and any discharge papers from the hospital.  ECF No. 493.

Ms. Pal filed no evidence of the circumstances of her absence—and has since made no filings at all.

_May 24, 2024_

On May 24, 2024, defense counsel and the defendants were seated in the courtroom at 8:30 AM, in accordance with my orders.  Ms. Pal was absent and had filed nothing on the docket to explain her absence.  The courtroom deputy reported to me—and later stated on the record— that Ms. Pal had called her at 8:30 AM and hung up.  The courtroom deputy returned the call at 8:31 AM, at which point Ms. Pal picked up and told the courtroom deputy that she was at the Presbyterian Hospital in New York City, that she was aware that she was supposed to be in court at 8:30 AM, but that she would not be coming to court.  After confirming that all the jurors had arrived and were waiting in the jury room, I took the bench at 9:30 AM, noted Ms. Pal's absence, asked the courtroom deputy to recount her 8:31 AM telephone call with Ms. Pal, and then recounted some of the foregoing procedural history for the record.  I then asked defense counsel

---

[2] While I do not suggest that this is dispositive of anything, it is at least worth noting that my and my law clerk's Internet searches, including various websites chronicling road accidents in Connecticut, did not turn up any road accidents that might have matched the plaintiff's various descriptions of her accident.

if they would like to say anything for the record. Counsel for both sets of defendants made a

new, oral motion to dismiss under Rule 41(b), reciting some further procedural history from the

case, arguing that Ms. Pal had repeatedly violated court orders, that her delays and repeated no-

shows had wasted their and their clients' time and money, and that Ms. Pal's court filings

suggested she was delusional and paranoid. They also pointed out that Ms. Pal had failed to file

anything on the record to substantiate her version of events regarding her failures to appear, even

after I had repeatedly ordered her to do so. I granted the motion, providing some brief reasoning

and indicating that this opinion would follow.

### III.   LEGAL STANDARD

"Rule 41(b) of the Federal Rules of Civil Procedure authorizes the district court to

dismiss an action [i]f the plaintiff fails to prosecute or to comply with [the] rules or a court

order." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (internal quotations marks

omitted, alterations in original). A district court considering a Rule 41(b) dismissal must weigh

five factors: "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether

plaintiff was on notice that failure to comply would result in dismissal, (3) whether the

defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the

court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be

heard, and (5) whether the judge has adequately considered a sanction less drastic than

dismissal." *Id.* (internal quotation marks omitted). "Generally, no one factor is dispositive."

*Nita v. Connecticut Dep't of Envtl. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994).

### IV.   DISCUSSION

A court should not lightly dismiss a case under Rule 41(b). The procedural history of this

case, however, demonstrate a long-standing pattern of Ms. Pal's refusal to abide by the Court's

orders, culminating in her failure to appear for jury trial on May 23 and May 24, 2024.  Ms. Pal's conduct follows a pattern of taking this case up to the eve of trial—or in the most recent instance, up to the first day of evidence—and then finding an excuse to delay proceedings.  Regardless of whether this conduct is prompted by anxiety about trying the case or a desire to harass the defendants, dismissal under Rule 41(b) is appropriate and necessary.

The first factor a district court must consider when weighing a motion to dismiss under Rule 41(b)—the duration of the plaintiff's failure to comply with the court order—weighs in favor of dismissal.  In April 2022, the Second Circuit affirmed the Court's rulings on the defendants' motions for summary judgment and returned the case to this Court for trial.  ECF No. 213.  Since then, Ms. Pal's dilatory tactics and disregard for my orders have made it impossible to try this case.  This case has been scheduled for trial on three separate occasions[3]: January 2023, *see* ECF No. 227, October 2023, *see* ECF No. 302, and May 2024, *see* ECF No. 421.  On each of those occasions, Ms. Pal has, at the eleventh hour, raised issues that have delayed the trial.  At the first scheduled date for jury selection in this matter on January 20, 2023, immediately before the prospective jurors were brought into the courtroom, Ms. Pal reported that she had tested positive for COVID-19.  ECF No. 311 at 1.  While Ms. Pal may have had COVID-19 on that occasion, her failure to timely advise the defendants and the Court of her positive test and renewal of symptoms imposed unnecessary costs on all, and more recent developments suggest that her actions then may have been prompted by an alternative or additional motive of delay.  I then rescheduled jury selection to October 4, 2023.  ECF No. 302.  Less than a week in advance of that jury selection date, Ms. Pal filed a notice representing that

---

[3] As noted previously, I also continued the jury selection in this matter from April 17, 2024 to May 22, 2024 to accommodate a scheduling conflict of one of defense counsel, who notified the Court of the conflict over a month in advance of the jury selection date and who secured Ms. Pal's agreement to the new jury selection date.  *See* ECF No. 385; ECF No. 409; ECF No. 417; ECF No. 418; ECF No. 421.

she had, again, tested positive for COVID-19, ECF No. 363, and presented as weak and sickly during the telephone conference held the day before trial.  So I was forced to continue the trial once more.  Finally, the Court rescheduled jury selection for May 22, 2024.  ECF No. 421.  After completing jury selection on May 22 and beginning the presentation of evidence to the jury, Ms. Pal failed to appear for the second and third days of trial, purportedly as a result of a car accident that, despite court orders, she has failed to substantiate.

The procedural history of this case evinces a clear pattern:  Every time trial draws near, an apparent medical or other emergency arises, resulting in Ms. Pal's inability to try the case.  At this point, it is all too coincidental for such an emergency to arise right as trial begins—not once, not twice, but three times.  Faced with this pattern, I ordered Ms. Pal to produce evidence—any evidence—of her representations concerning the accident, her medical condition, and her alleged inability to continue with trial.  I ordered her to file "**whatever records of the crash she currently has and whatever hospital records she currently has by 5:00 PM**" on May 23.  ECF No. 489 (emphasis in original).  She did not do so.  I also ordered her to "file on the docket by **6:00 PM** [on May 23] any documents she has reflecting the towing or other handling or disposition of her vehicle" and to "file any documentary proof she has at all of the events described in ECF No. 491, such as the card of the officer to whom she spoke or her intake and/or discharge papers from the hospital."  ECF No. 493 (emphasis in original).  Again, she did not do so.

This failure is telling because, as her filing at ECF No. 491 demonstrates, Ms. Pal was obviously capable of preparing and posting a coherent multi-paragraph filing on the docket after the alleged accident.  And she was capable of calling and emailing members of the Court's staff after the incident.  Her failure to abide by my orders to furnish proof of her story suggests either

that Ms. Pal intentionally refused to follow the Court's orders or that she possesses no documentary proof of her claims, although in that case, she could have filed a declaration or affidavit, something she knows how to do, *see e.g.*, ECF No. 177-1; ECF No. 399-1, but did not do here.  While court staff were able to confirm that Ms. Pal was admitted to the emergency room at Midstate Hospital in Meriden, Connecticut and was discharged shortly thereafter, "[i]t is quite easy to drive oneself to the hospital complaining of ' . . . pain[],' but this appears to be nothing more than an obvious gambit to avoid . . . responsibility to proceed at trial." *Ivery v. Baldauf*, No. 14-CV-6041L, 2021 WL 2155100, at *5 (W.D.N.Y. May 27, 2021).  Beyond her admittance to the emergency room (which court staff, not Ms. Pal, verified), Ms. Pal has not provided any support for her claims concerning the alleged accident:  She has not provided the Court with discharge paperwork from the hospital, the police officer's identification card, information regarding the towing of her car,[4] or any other proof supporting her claims.  These are pieces of information that Ms. Pal should have in her possession if the events took place as she claims they did.  Without this evidence, Ms. Pal's claims lack any indicia of credibility.

Moreover, Ms. Pal's story contains conspicuous gaps.  Her May 23 unsworn filing regarding the alleged car accident is barren of detail.  She represents that a car swerved into her lane, but she does not know whether it struck her car or whether she "reflexively swerved to avoid a collision [and] crashed into a guard rail."  ECF No. 491 at 1.  She does not provide a description of the car, nor does she state where the incident occurred.  She represents that a police officer responded to the scene, but she does not provide the officer's name or the

---

[4] Ms. Pal stated in her filing on May 23 that her car, which was purportedly towed away from the scene of the accident, had "many" of her exhibits inside.  *See* ECF No. 491 at 1.  Though Ms. Pal has not argued as much, I note that the alleged unavailability of her trial exhibits would not have been an obstacle to her ability to try the case because the Court had copies of her exhibits and could have supplied her with them.  In addition, her copies presumably could have been obtained with a phone call to the towing company.

municipal department the officer is associated with.  She informed a member of the Court's staff

that "the FBI" appeared on the scene of the crash, but offered no suggestion why the FBI would

investigate a routine car accident.  She cryptically implies that the accident may have been

"intentional," but provides no basis for this belief.  She also represents that at the hospital she

underwent CT scans of the head and neck, but she does not mention the results of those scans or

suggest that she has received any diagnosis.  Nor does she explain why, after being discharged

shortly after arriving at Midstate Hospital in Connecticut on May 23, emailing and telephoning

court staff, and filing a motion for a "stay" of the trial, she was admitted to Presbyterian Hospital

in New York by the morning of May 24.  In short, aspects of her story simply do not add up.

And she prevented the Court from learning more about the circumstances of her absence and her

physical and mental condition by failing to show up on May 24 after the Court ordered her to

appear and indicated it "intend[ed] to question the plaintiff . . . about the circumstances

concerning her absence."  ECF No. 489.

  And when it is viewed through the lens of the past eighteen months, Ms. Pal's filing of a

complaint against counsel for the Wilton police defendants and her subsequent motion to

disqualify those attorneys as counsel in this case mere days ahead of the start of trial provides

further evidence of her dilatory motives.  The new complaint focuses on an event that took place

in February 2023—over a year before the complaint was filed—but Ms. Pal apparently waited to

file it until shortly before the trial.  And when, at the pretrial conference on May 10, I made clear

that the new complaint would not impede the trial in this matter, Ms. Pal appeared visibly

frustrated.  She argued that defense counsel for the Wilton police defendants should be

disqualified, *see* ECF No. 450 at 75–76, and she subsequently filed a motion to disqualify them,

ECF No. 447.  Had I granted that motion, of course, it would have been necessary yet again to

reschedule the trial, which was scheduled to begin nine days from the date Ms. Pal filed her motion to disqualify.  It appears, then, that the new complaint and the motion to disqualify were motivated, at least in part, by an apparent desire further to delay the jury trial in this matter.

Together, Ms. Pal's absences, her failure to provide credible explanations or evidence for them, her refusal to appear to be questioned, and the procedural history of this case all lead me to conclude that she is attempting to prevent the jury trial of this case.  For all these reasons, I find the duration of Ms. Pal's failure to comply with court orders to be considerable.  Her refusal to abide by the Court's orders to provide proof of her claims and to appear for trial on two consecutive days resulted in a substantial waste of time and resources by the jurors, the defendants, their lawyers, and court staff.  *See, e.g.*, *Ivery*, 2021 WL 2155100, at *5–7 (dismissing case with prejudice under Rule 41(b) where the *pro se* plaintiff failed to appear for jury selection due to an alleged medical emergency that the court did not find credible); *Sabatino v. Emeana*., No. 97-CV-7637, 2000 WL 34017111, at *1 (E.D.N.Y. Aug. 1, 2000) (entering default judgment against a *pro se* defendant where the defendant failed to appear for trial due to an unsubstantiated "medical emergency," the court rescheduled the trial, and the defendant failed to appear for the rescheduled trial due to his "medical condition" as well as to subsequent hearings due to "a work-related scheduling conflict"), *aff'd*, 13 F. App'x 36 (2d Cir. 2001).

And while it has been only a few days since she violated my orders to appear and provide evidence to support her vague story, her non-compliant conduct extends beyond the most recent incidents to form a longstanding pattern of disobedience and delay.  Ms. Pal has repeatedly failed to follow court orders in this case.  For example, in an August 11, 2023 order denying her motion for sanctions against defense counsel, I gave Ms. Pal the following warning:  "**[F]or the sake of clarity going forward, the plaintiff must abide by the following rules:  1. The plaintiff is**

16

**prohibited from making unsubstantiated allegations of misconduct by defense counsel either in filings on the docket or during court proceedings.  Any filings making allegations of misconduct must be supported by evidence and must not rely on unsupported inferential leaps or speculation.**"  ECF No. 312.  Nevertheless, Ms. Pal filed a "substantively identical" motion for sanctions mere days after I issued my warning.  ECF No. 317.  In addition, also in August 2023, I ordered Ms. Pal to pay defense counsel's attorneys' fees and costs related to their preparation for trial and attendance at jury selection on January 19 and 20, 2023.  ECF No. 354; ECF No. 355.  In October 2023, I denied Ms. Pal's motion to stay these rulings and ordered her to "comply with the orders within 14 days," ECF No. 390, and in November 2023, I ordered her "immediate[]" compliance with the payment orders, ECF No. 392.  Nevertheless, Ms. Pal did not pay defense counsel until January 31, 2024—over five months after I initially ordered her to pay the costs and fees.  *See* ECF No. 397; ECF No. 404; ECF No. 407.

The duration of her non-compliance with court orders thus weighs in favor of dismissal.

The second factor—whether the plaintiff was on notice that failure to comply would result in dismissal—also weighs in favor of dismissal.  I have, on numerous occasions throughout this litigation, informed Ms. Pal that her failure to abide by the Court's orders may result in dismissal.  *See, e.g.*, ECF No. 48, ECF No. 107; ECF No. 228; ECF No. 268; ECF No. 312.  Most recently, my May 23 order requiring Ms. Pal to provide evidence and to appear in court the next morning explicitly stated that "[a]ny failure to appear may result in sanctions, up to and including dismissal."  ECF No. 489.  As if that were not enough, the defendants have filed several motions to dismiss this case under Rule 41(b) for failure to abide by the Court's orders, putting Ms. Pal on notice that the Court has authority under Rule 41(b) to dismiss her case if she

fails to follow orders.  Ms. Pal was aware that her failure to comply would result in dismissal, and so the second factor weighs in favor of dismissal.

The third factor—whether the defendants are likely to be prejudiced by further delays in the proceedings—tips heavily in favor of dismissal.  The defendants and their counsel have appeared in court, prepared for trial, on three different occasions—*i.e.*, January 20, 2023 and May 23 and 24, 2024—, and on all three occasions Ms. Pal's conduct has made trying the case impossible.  This has wasted significant amounts of the defendants' time and resources.  But the harm of Ms. Pal's conduct goes beyond economic loss to the defendants.  Ms. Pal has leveled grave allegations against the defendants, accusing them of crimes as well as civil rights violations.  These accusations have now hung over their heads for over six years.  Just as plaintiffs have a right to their day in court, defendants have a right to timely defend themselves against plaintiffs' accusations.  *See, e.g.*, *Abbatiello v. Monsanto Co.*, 569 F. Supp. 2d 351, 354 (S.D.N.Y. 2008) ("Defendants have a right to defend the claims brought against them expeditiously and to obtain a speedy resolution.").  The defendants are not bound to carry the burden of Ms. Pal's accusations against them indefinitely.  To give Ms. Pal another chance to take this case to trial would deprive the defendants of their right to timely defend themselves and would violate basic principles of equity embedded in our judicial system.  *See, e.g.*, *Scott v. Westchester Cnty.*, No. 18-CV-7203, 2022 WL 161462, at *3 (S.D.N.Y. Jan 18, 2022) ("It is simply unfair and prejudicial to Defendants to require them to continue dedicating resources to a case that remains suspended indefinitely."); *Ivery*, 2021 WL 2155100, at *7 ("[I]t is unfair to the defendant to have this matter pending for over seven years without a resolution."); *Cinevert v. Varsity Bus. Co.*, No. 12-CV-01223, 2016 WL 7388328, at *2 (E.D.N.Y. Dec. 20, 2016) ("[I]t would be unfair to the defendants to allow this case to remain open indefinitely . . . .").  Because

more delays at this point would undoubtedly even further prejudice the defendants, I find this factor weighs particularly heavily in favor of dismissal.

The fourth factor—a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard—also weighs in favor of dismissal.  The Court has expended considerable time and resources in preparation for three jury trials in this matter.  Moreover, as illustrated by the extensive docket of nearly 500 entries, including a raft of unnecessary sanctions and disqualification motions, this acrimonious litigation has placed a heavy strain on the Court's docket.  *See Baptiste*, 768 F.3d at 218 (discussing as a factor of the Rule 41(b) analysis whether the case in question "strained its docket in any unusual way").  "The efficient administration of judicial affairs—a consideration vital to the Court's ability to provide meaningful access to other litigants—depends on the Court's overseeing its docket and guaranteeing that its cases progress with appropriate speed." *Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, No 99-CV-9311, 2000 WL 1677984, at *3 (S.D.N.Y. Nov 8, 2020).  Allowing this case to continue would represent an inefficient use of the Court's resources, especially because Ms. Pal has shown no interest in actually trying her case. This burden on judicial resources outweighs any interest Ms. Pal may have in having a chance to be heard, as her failures to appear and to respond to court orders show that she has effectively abandoned her claims.

The final factor—whether the judge has adequately considered a sanction less drastic than dismissal—also favors dismissal.  As noted, I previously imposed financial sanctions against Ms. Pal for unreasonably "caus[ing] court personnel, prospective jurors, defense counsel, and the defendants unnecessary time and expense."  ECF No. 311 at 2; *see also* ECF No. 354; ECF No. 355.  But these sanctions have not deterred her from further wasting potential jurors',

the defendants', and the Court's time and resources, nor have they deterred her from violating more of the Court's orders.  Therefore, lesser sanctions would not adequately deter Ms. Pal from future violations of court orders.  *See, e.g.*, *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, No. 20-CV-1281, 2021 WL 7159899, at *4 (E.D.N.Y. Nov. 23, 2021) (finding that no lesser sanction could deter future violations because "this Court has already considered and imposed lesser sanctions," including financial sanctions), *report and recommendation adopted*, No. 20-CV-1281, 2022 WL 73484 (E.D.N.Y. Jan. 6, 2022); *Azkour v. Maucort & Little Rest Twelve, Inc.*, No. 11-CV-5780, 2018 WL 502674, at *8 (S.D.N.Y. Jan. 18, 2018) ("[C]onclud[ing] that no sanction less severe than dismissal with prejudice will effectively address Plaintiff's conduct" because "[t]he Court ha[d] already threatened—and employed—lesser sanctions" and "[t]he record demonstrates that these lesser sanctions have been wholly ineffective in controlling Plaintiff."); *see also Simmonds v. City of New York*, No. 21-CV-06495, 2023 WL 6879615, at *3 (E.D.N.Y. Oct. 18, 2023) ("I have considered imposing less drastic sanctions, such as monetary sanctions.  But since warning Plaintiff that his case may be dismissed has not triggered his participation, there is no reason to believe that a lesser sanction would be effective." (internal quotation marks omitted)).

Each of the factors courts must consider when weighing whether to dismiss a case under Rule 41(b) favors dismissal here.  Ms. Pal has had several opportunities to have her day in court, but at every opportunity she has failed to proceed, disobeying this Court's orders in the process. I have given her multiple opportunities to correct her behavior and to have her case heard on the merits, but she has refused to follow court orders or to prosecute her case, effectively abandoning her claims.  Therefore, although dismissal with prejudice is a harsh remedy and although courts

must give *pro se* plaintiffs liberal consideration, I find dismissal with prejudice under Rule 41(b) necessary in this instance.

**V.      CONCLUSION**

For the foregoing reasons, the Court DISMISSES this case with prejudice under Rule 41(b) for failure to prosecute and failure to follow court orders.


IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut

May 29, 2024