UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NEELU PAL,<br><br>  *Plaintiff*,<br><br>  v.<br><br>ROBERT CIPOLLA, ROBERT SMALDONE, MICHAEL TYLER, DANIEL MONAHAN, and RICHARD JANES.,<br><br>  *Defendants*. | No. 3:18-cv-00616-MPS |

## RULING ON MOTION FOR RECONSIDERATION

After careful consideration, the Court DENIES the plaintiff's motion for reconsideration (ECF No. 502), for the reasons stated below and in the Court's May 29 order explaining its decision to dismiss this case under Fed. R. Civ. P. 41(b) (ECF No. 500, the "May 29 Order"). This ruling presumes familiarity with the May 29 Order and the lengthy record in this case.

To begin with, the motion does not satisfy the Second Circuit's "strict" standard for reconsideration, which requires the movant to "point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see* D. Conn. L. Civ. R. 7(c)(1). Instead, the plaintiff's motion seeks to introduce into the record new materials – including her declaration, a few hospital records, and some photos of a damaged car –, materials that were not available to the Court when it decided to dismiss her case for failure to prosecute and follow court orders. These new materials – filed eight days after the Court ordered that any such documents be filed, without any explanation of why the plaintiff could not or did not timely comply with those orders – are not a proper basis for reconsideration. *See, e.g., Townsquare Media, Inc. v. Regency Furniture, Inc.*, No. 21-CV-4695, 2023 WL 6289984 * 1 (S.D.N.Y. Sept. 27, 2023) ("A movant may not rely on facts, issues, or arguments that were

1

previously available but not presented to the court. Nor is a motion for reconsideration the proper avenue for the submission of new material. Rather, to be entitled to reconsideration, a movant must demonstrate that the court overlooked controlling decisions or factual matters that were put before it on the underlying motion, which, had they been considered might reasonably have altered the result reached by the court." (internal quotation marks, alteration, and citations omitted)).

Even if these new materials had been timely submitted, however, the Court would not have altered its decision to dismiss this case. Taken together, the materials do not show that the plaintiff was too ill to appear in court on May 24, as the Court ordered. Worse, they fit a disturbing pattern in which the plaintiff's unsubstantiated views about supposed wrongdoing by the defendants and defense counsel prompt her to disrupt this case at great expense to all.

To be sure, the new materials do provide evidence that the plaintiff was in a car accident on the morning of the second day of trial in this case. Although the three pages of medical records are incomplete and do not bear unequivocal evidence of authenticity, one page labeled "ED Notes" states, in an entry made at 9:23am on May 23, 2024, that "Patient arrives to ED via ems," ECF No. 502-3 at 1, which the Court understands to refer to the plaintiff's being transported to the emergency room in an ambulance. This is consistent with the plaintiff's reports, made to this Court and to medical staff at the hospital, that she was involved in a motor vehicle accident earlier that morning. The same page of the medical records includes an entry at 11:13am that the "[p]atient [was] appropriate for [discharge] per provider" and that she "verbalize[d] all discharge instructions" and had a "[s]teady gait." *Id.; see also* ECF No. 487 (noting that the Court was informed by hospital staff that the plaintiff was discharged at approximately 11am on May 23). This page also states that when she arrived at the emergency

room, the plaintiff was "complaining of neck pain," but the plaintiff's declaration states that she underwent "CT scans," ECF No. 502-1 at 2, before she was cleared for discharge about 90 minutes after her arrival. The plaintiff has submitted no other records reflecting her emergency room visit on May 23, and it is apparent from the fact that the last line of type ends in the middle of a sentence that the single page provided is only a partial record.

The remaining two pages of medical records appear to reflect a May 24 visit to another hospital emergency room, apparently printed from the plaintiff's healthcare portal. An entry made at 6:46am by an identified provider states that the plaintiff reported that another car had "swerved in front of her and she ended up hitting the guard rail at approx. 30 mph." ECF No. 502-4 at 2. The plaintiff further reported that she had been wearing her seatbelt and that no airbags had deployed. *Id.; see also id.* at 1. She also reported "severe headache and neck pain" and that the "pain has become worse since onset." *Id.* at 2. An entry apparently made later the same day by an identified physician indicates: "CT head and C-spine negative at that time [*i.e.*, on 5/23]. Continued headache, pending 2d CT head. If negative, discharge." *Id.* at 1. The plaintiff reports that she was discharged later that same day, *i.e.*, on May 24. ECF No. 502-1 at 3 (referring to "returning home on 5-24-2024"). Another entry not signed by a nurse or physician states "traumatic injury of head, initial encounter," ECF No. 502-4 at 1, but it is unclear whether this is a formal diagnosis or simply a reflection of the plaintiff's self-report. Under that entry appears the following: "53 year old female with [history of hypertension], PTSD, right radial nerve palsy [status post] [motor vehicle collision] yesterday morning, revisit for worsening headache. Neuro exam unremarkable. Will re-image brain." *Id.* The plaintiff provides no further records of this May 24 hospital visit.

In her declaration, the plaintiff states that on May 30, she underwent "further evaluation, CT scans and MRI" and was diagnosed with "traumatic brain injury, concussion, cervical spine radiculopathy and post-concussive syndrome." ECF No. 502-1 at 4. But she provides no medical records reflecting a May 30 medical visit or any of these diagnoses.

Taking into consideration all of the evidence the plaintiff attached to her motion for reconsideration, the Court is not convinced that the plaintiff was too ill to appear for trial on two consecutive days or to comply with the Court's orders to submit evidence of her claims. The plaintiff's own evidence indicates that the medical providers believed she was well enough to be discharged shortly after arriving at the emergency room on May 23. *See* ECF No. 502-3 at 1 (indicating that "[p]atient [was] appropriate for [discharge] per provider" and that she "verbalize[d] all discharge instructions" and had a "[s]teady gait"); *see also* ECF No. 502-4 at 2 (medical report indicating that the plaintiff stated that "she had a negative CT head and c-spine" examination on May 23). And the record of her hospital visit the following day states that her "[n]euro[logical] exam [was] unremarkable," *id.* at 1, and suggests that she had a second negative CT scan, *id.* (indicating that if the plaintiff's second CT scan was negative, she would be discharged); ECF No. 502-1 (the plaintiff averring that she was discharged that day). This evidence, coupled with the procedural history of this case, suggests that the plaintiff was well enough to appear in court to answer questions about her absence and to file evidence on the docket as ordered. *See Ivery v. Baldauf*, No. 14-CV-6041L, 2021 WL 2155100, at *6 (W.D.N.Y. May 27, 2021) (dismissing case under Rule 41(b) where plaintiff went to hospital on the trial date complaining of "chest pains" and noting that "[t]here was a document from Rochester General Hospital indicating that plaintiff did appear there, but there is no significant medical

4

evidence that what he suffered was anything more than mere anxiety over being required to proceed to trial according to a court order").

At first blush, it may appear unduly harsh or unfair for the Court to dismiss the case of a person who was taken to the emergency room following a car accident on the second day of trial, or for the Court to demand clearer evidence of illness than what the plaintiff has submitted. Indeed, if the plaintiff had not occasioned two previous delays of the trial after jurors had been summoned and/or appeared, if she had not previously repeatedly violated the Court's orders, if she had not made wild, unsupported allegations throughout her five years of litigating this case, the Court would vacate the dismissal, reopen the case, and postpone the trial, even despite the plaintiff's late filings and incomplete medical records.  But the plaintiff has done all of those things, and reopening the case now would grossly prejudice the defendants, waste court resources, and condone further violations of court orders.  The Court will not repeat the procedural history set forth in its May 29 Order but incorporates that history by reference.  Under the circumstances of this case, it is necessary for the Court to demand clear proof from the plaintiff that her accident and her medical condition truly prevented her from complying with its orders (a) to file on the docket by 6:00pm on May 23 materials explaining her absence and (b) to appear in court on May 24 – which is when the Court needed the information to determine whether to grant a brief continuance, to declare a mistrial, or to dismiss the case.  *See* ECF No. 489; ECF No. 492; ECF No. 493.  She has not provided that clear proof, and, indeed, she has provided no evidence showing why she could not have docketed eight days earlier some of the materials that she filed on May 31, especially given that she was able to file on May 23 a brief asking that the Court "stay" the trial.  ECF No. 491.  And due to the plaintiff's long history of making unsubstantiated allegations about matters relating to this litigation – many of which the

5

Court has specifically found to be incredible or unsubstantiated, ECF No. 228; ECF No. 312; ECF No. 311 at 6-7 –, it is also necessary for the Court to demand evidence of specific diagnoses from physicians supported by medical tests instead of relying on her self-reports. Plaintiff has not provided this information either.

Finally, the plaintiff's latest filings continue a disturbing pattern in which her apparent belief – unsupported by any evidence – that the defendants and defense counsel have been trying to cover up the defendants' alleged wrongdoing has led her to disrupt the progress of the case. In the filings made since failing to appear for trial on the morning May 23, the plaintiff has asserted that the motor vehicle accident stemmed from another vehicle's following her, "swerving" in front of her, hitting her, and running her off the road, and she has suggested that the driver of the other vehicle was associated with the defendants in this case. ECF No. 502-1 at 1 (stating that she "noticed a vehicle following me for a prolonged period of time"), *id.* at 2 (stating that she observed at the accident scene a "male in plain clothes with [a] police badge" and heard a reference to "Wilton police"). Although the medical records reflect that the plaintiff stated "she thinks [the] car hit her," ambulance personnel reported that "an off duty officer was behind her and stated no car hit her." ECF No. 502-3 at 1. The plaintiff's affidavit, combined with her May 23 filing and May 23 email to the Court's law clerk, likewise suggest that she believed someone associated with the defendants was following her, which prompted her to pull off a busy highway and then renter it, at which point, she claims, "the same vehicle that had been following me" ran her off the road. *See* ECF No. 502-1 at 1-2; *see also* ECF No. 491 at 1; ECF No. 489 (email stating that she wanted a "stay [of] this matter until there is some clarity on the identity of the [other] driver….").

As noted in the May 29 Order, the plaintiff has frequently sidetracked the case with other similarly unsupported allegations of the defendants' or defense counsel's alleged wrongdoing during the lengthy course of this litigation. *See, e.g.*, ECF No. 82 at 2 (plaintiff objecting to her deposition and seeking – before the COVID-19 pandemic – to be deposed remotely based on her allegation "[u]pon information and belief" that "some of the defendants intend to further threaten and intimidate me at some time immediately prior to or during my deposition[] to prevent me from testifying fully"); ECF No. 91 at 1 (plaintiff moving to disqualify defense counsel in part because "[u]pon information and belief, the law firms of Karsten & Tallberg . . . and Cotter, Cotter & Mullins . . . have entered into . . . a joint defense agreement"); ECF No. 132 at 7 (alleging in an "ex parte motion for review" of a Magistrate Judge's order that "[t]he Wilton Police defendants are capable and willing to go [to] any lengths to terrorize, intimidate and assault plaintiff and her children to cover up their criminal actions . . . ."); ECF No. 136 (accusing the defendants of making "misrepresentations to the Court"); ECF No. 228 (describing plaintiff's accusation that defense counsel was having ex parte communications with the Court, apparently based on defense counsel's emails to the undersigned's law clerk copied to all parties); ECF No. 305 at 2-3 (plaintiff's motion for sanctions accusing "[d]efendants and their attorneys" of "conceal[ing] evidence" and "on at least two separate occasions" presenting the Court "with fabricated evidence" and "blatantly l[ies]" about whether evidence was properly preserved); ECF No. 311 (order denying plaintiff's motion for sanctions, noting that there was "zero support" for the plaintiff's allegations and warning her to refrain from making further "wild" and "unsubstantiated allegations of misconduct"); ECF No. 317 (order requiring plaintiff to show why she should not be held in contempt for filing a substantively identical sanctions motion);  ECF No. 447 (plaintiff's second motion to disqualify counsel claiming that they had

7

"independent knowledge of an investigation conducted by the CT State's Attorneys"); ECF No. 455 (order denying plaintiff's second motion to disqualify counsel noting that plaintiff provided no support for that claim). And in a May 2024 complaint of judicial misconduct filed against the undersigned, Plaintiff makes the following allegation: "[O]n May 17, 2024, one or more Wilton police officers drove past my home in a police car and tossed tainted food/meat over the fence into my property. My pet dog, who was in the preliminary stages of training as a service animal, ate this meat and died"; plaintiff also stated that this alleged incident was "captured on home surveillance video" but did not suggest that any such video was submitted with the complaint.

At this point, there is ample reason to believe that the plaintiff would, if the Court vacated its dismissal order and reopened the case, continue to make unsubstantiated allegations and disrupt the litigation with motions for continuances, motions for sanctions, motions to disqualify, and the like. And there is likewise good reason to believe that, in that event, the plaintiff would, in the days immediately preceding the trial or during the trial, once again create some circumstance or incur some illness or other emergency that would make it impossible to proceed with the trial. That would mean that the defendants and their lawyers would, for a fourth time, have had to prepare for trial, subpoena witnesses, and assemble in court together with jurors for jury selection and trial – all at further expense and all for nought. At this point, the Court will not allow such a further waste of the defendants', defense counsel's, jurors', or the Court's time and resources.

For the foregoing reasons and those set forth in its May 29 Order, the Court DENIES the motion for reconsideration.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut

June 3, 2024