**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NEELU PAL,<br><br>　　　*Plaintiff*,<br><br>　　v.<br><br>ROBERT CIPOLLA, ROBERT SMALDONE,<br>MICHAEL TYLER, DANIEL MONAHAN, and<br>RICHARD JANES.,<br><br>　　　*Defendants*. | No. 3:18-cv-00616-MPS |

**RULING ON PENDING MOTIONS**

In May, the Court dismissed this case under Rule 41(b) due to the *pro se* plaintiff's continued violations of court orders and her failure to appear for trial. Eighteen days after the Court denied her motion for reconsideration of the dismissal, the plaintiff filed a motion to amend or alter the judgment—essentially a motion to reconsider by another name—and for a new trial. ECF No. 511. For the reasons set forth below and in its rulings denying reconsideration (ECF No. 503) and dismissing this action (ECF No. 500), the Court DENIES the plaintiff's motion to amend or alter the judgment and for a new trial.

For their part, the defendants have filed a motion seeking attorneys' fees and costs associated with their preparation for and appearances in Court on the two successive days of trial on which the plaintiff failed to appear in defiance of court orders, i.e., May 23 and 24. ECF No. 501. While the Court agrees with the defendants that the plaintiff's failure to appear in the middle of a jury trial, despite Court orders that she do so, "resulted in a substantial waste of time and resources by the jurors, the defendants, their lawyers, and court staff," ECF No. 501 at 1, the Court has already imposed a sanction on the plaintiff more severe than the imposition of

attorneys' fees, namely, dismissal of her case. It declines to impose further sanctions on the plaintiff and so DENIES the defendants' motion.[1]

## I.   BACKGROUND

This case has a long and tortuous history detailed in previous rulings in this case, and the Court will not repeat it here. The relevant parts of that history are set forth in the ruling dismissing this action (ECF No. 500) and the ruling denying reconsideration (ECF No. 503), and the Court incorporates those rulings by reference and assumes the reader's familiarity with those rulings.

## II.   PLAINTIFF'S MOTION (ECF NO. 511)

### A.   Motion to Alter or Amend Judgment

#### 1.   Legal Standard

"Motions [to alter or amend a judgment] under Rule 59(e) are governed by the same standards as those governing motions for reconsideration, and may be granted only if the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Ellis v. Solomon & Solomon*, 2009 WL 1043851, at *1 (D. Conn. Apr. 17, 2009) (internal quotation marks omitted). Because I have already denied the plaintiff's motion for reconsideration, I have already applied that standard to the facts of this case; and the rules do not permit successive motions for reconsideration. S*ee, e.g., Hamilton v. HSBC Bank U.S.A. N.A., As Trustee*, 2020 WL 59935, at *1 (D. Conn. Jan. 6, 2020) ("[N]either the Bankruptcy Rules … nor the local Rules of this Court … permit the filing of multiple motions for reconsideration."); *Guang Ju Lin*

---

[1] The Court GRANTS the Ambulance Defendants' unopposed Motion to Join the Wilton Defendants' Objection to the Plaintiff's Motion to Amend or Alter Judgment. ECF No. 515.

*v. United States*, 2015 WL 747115, at *3 (S.D.N.Y. Feb. 18, 2015) ("A litigant is entitled to a single motion for reconsideration.").

Nonetheless, because the deadline for filing a motion for reconsideration under this Court's Local Rule 7 (which permits reconsideration of both pre-judgment and post-judgment motions) is shorter than the deadline under Rule 59(e) (which applies only to post-judgment motions), the Court will still consider whether the plaintiff has pointed to any controlling authorities or anything in the record that the Court overlooked in its ruling dismissing the case under Rule 41(b) (ECF No. 500), at least to the extent I have not already plowed the same ground in the ruling denying reconsideration (ECF No. 503). I will also, in sections B and C below, consider her arguments under Rule 59(a) and Rule 60 because she invokes those provisions as well.

## 2. Discussion

Some of the exhibits the plaintiff has submitted in support of her motion to alter or amend the judgment are identical to those submitted in support of her motion for reconsideration, including her affidavit (ECF No. 502-1 and ECF No. 511-1), photos of damage to a vehicle she says was the car she was driving on May 23, 2024 (ECF No. 502-2 and ECF No. 511-2), records of her ER visit and discharge on May 23, 2024 (ECF No. 502-3 and ECF No. 511-3), records of her ER visit and discharge on May 24, 2024 (ECF No. 502-4 and ECF No. 511-5), and an image of what she says is her phone showing an outgoing call and two apparently attempted outgoing calls on May 23 and 24 (ECF No. 502-5 and ECF No. 511-4). The Court already carefully considered these records in its ruling on the motion for reconsideration, *see* ECF No. 503 at 2-6, and these documents do not persuade the Court to alter its ruling dismissing the case any more now than they did then.

The new documents the plaintiff submits do not move the needle either.  They are summarized below.

- The plaintiff submits another medical record from an unknown provider reflecting the May 24, 2024 ER visit.  ECF No. 511-6.  The document memorializes her statements to the provider about the car accident, statements that differ from her other accounts of the accident and from the account of an eyewitness.  *Compare* ECF No. 511-6 at 1 (the plaintiff reporting to ER provider on May 24 "that another car swerved in front of her and she ended up hitting guard rail") *and* ECF No. 505 at 2 (the plaintiff stating that another vehicle "that had been following Plaintiff s[w]erved into the right lane where plaintiff was driving and either struck Plaintiff['s] car or otherwise caused Plaintiff's car to … crash into the adjoining guard rail") *with* ECF No. 505-2 (medical record of ER provider on May 23 stating: "Patient overall poor historian, she believes that she was rear-ended today while driving … she notes she hit a guard rail but believes this was because she was rear-ended, patient tells me that police arrived and told her that she [was] not in fact rear-ended when she lost control of her vehicle.  Patient cannot recall the accident.") *and* ECF No. 502-3 at 1 ("ems [states] an off duty officer was behind her and stated no car hit her.").  The new May 24 record also states that the plaintiff "reports severe headache and neck pain," as well as "light sensitivity."  Her physical exam, as reflected in the document, showed normal mental and physical condition, except "diffuse posterior neck tenderness" and an unrelated injury to her right arm.  ECF No. 511-6 at 2-3.  The document also states, under "number of diagnoses or management options," "traumatic injury of head, initial encounter," but does not make clear whether this is a formal diagnosis after examination and tests or simply an assessment based on the plaintiff's reports.  *Id.* at 3.  The document reflects negative results upon head and eye imaging and that, after several hours at the hospital, "Patient states that her vision improved, no more headache and she feels much better and wants to go home."  *Id.* at 3-4, 6.

- The plaintiff submits a record from an unknown provider reflecting a medical visit on May 30, 2024.  This record notes that at her May 23 visit to the ER there were "no findings consistent with traumatic injury" and that she was discharged and went home, and that imaging at her May 24 visit was negative and "unremarkable."  ECF No. 511-7 at 1.  It states that the plaintiff was there (on May 30) because of "continued neck pain and spasm," that the plaintiff believed "there is a new deformity at the base of the neck … and now she is having trouble holding onto a cup" but was walking without difficulty.  *Id.*  Once again, her physical exam was normal, except that "pupils are pinpoint b/I" and her left arm had "diffuse weakness," although the plaintiff stopped trying to complete the arm strength test due to "neck pain."  *Id.* at 3.  An exam the same day by the consulting neurologist was similarly normal but noted "[left] arm diffusely 4/5" strength but there was a "possible component of effort," and there was a sensory

issue.  *Id*. at 8.  Under "impression," the consulting neurologist noted "cervical radiculopathy (c6)," which the neurologist did not link to the car accident, and "post traumatic headaches/post concussive syndrome."  *Id*.

- The plaintiff submits a medical record from another unknown provider reflecting a medical visit on June 17, 2024.  ECF No. 511-8.  This time the plaintiff reported "severe [headache,] severe photo phobia and severe dizziness and vertigo," weakness in the left arm, and paresthesia on the thumb and left forearm.  *Id*. at 1. Her mental status, eye, hearing acuity, gait, motor skills, coordination, and sensory examinations were all normal, except for weakness and decreased reflexes in the left arm.  *Id*. at 3.  An MRI of the brain was ordered.  *Id.* at 6.

- The plaintiff submits a transcript that she says reflects a recording of a conversation between two Wilton police officers in 2015.  ECF No. 511-9.  The recording might have been part of the trial evidence in this case had the trial proceeded and the recording admitted into evidence.

The Court has carefully reviewed all these documents and concludes that none of them includes anything it overlooked in dismissing this case.  These documents do not help the plaintiff for three reasons.  First, the plaintiff offers no explanation why she did not submit the May 24 and May 30 medical records, as well as the transcript of the 2015 conversation, with her May 31 motion for reconsideration.  *See* ECF No. 502.  Neither a motion for reconsideration nor a motion to alter or amend judgment is "a vehicle for … taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *see also Space Hunters, Inc. v. U.S.*, 500 F. App'x 76, 81 (2d Cir. 2012) (new evidence warranting reconsideration must be "evidence that was truly newly discovered or could not have been found [earlier] by due diligence" (internal quotation marks omitted)).

Second, the transcript of the 2015 conversation has no discernible relevance here, and the May 30 and June 17 medical records did not even exist when the Court made its decision to dismiss this case after the plaintiff failed to show up for the third day of trial on May 24, 2024. Indeed, the June 17 record reflects events that took place well after the trial would have been

completed had it continued in the normal course of events. The Court did not expect the trial to

take more than a week or so to complete. The same is likely true of the May 30 record.

Third and most importantly, even putting aside authenticity and completeness issues, the

fact that the medical providers are unidentified, and the questions the records raise about the

plaintiff's credibility (*see, e.g.*, ECF No. 505-2 at 1-2 (noting twice that the plaintiff was a "poor

historian")), none of the records suggest that the plaintiff could not have complied with the

Court's orders on May 23 and 24 to file materials the Court needed to make a decision about

whether to retain the jury. And none suggest that the plaintiff could not have complied with the

Court's order to show up in court on May 24 so that the Court could have assessed for itself

whether the plaintiff was able to continue with the trial—either on May 24 or after a few days

respite. All the records reflect that the plaintiff's mental and physical examinations were almost

entirely normal, and the only abnormal findings depended largely on the plaintiff's self-reports,

which were not substantiated by medical imaging. In short, these records suffer from the same

flaws as the records previously considered and rejected on reconsideration:

> Under the circumstances of this case, it is necessary for the Court to demand
> clear proof from the plaintiff that her accident and her medical condition truly
> prevented her from complying with its orders…. She has not provided that
> clear proof…. And due to the plaintiff's long history of making
> unsubstantiated allegations about matters relating to this litigation … it is also
> necessary for the Court to demand evidence of specific diagnoses from
> physicians supported by medical tests instead of relying on her self-reports.
> Plaintiff has not provided this information….

ECF No. 503 at 5-6. The plaintiff has not provided this information with her latest motion either.

There is nothing new here.[2]

_____

[2] The plaintiff's new assertion that "the Court did not provide sufficient notice," ECF No. 511 at 10, to her is not
supported by the record and has been fully addressed by the Court's discussion of the procedural history in this case
in its dismissal ruling. *See* ECF No. 500 at 7-11, 17-18; *see also* ECF No. ECF No. 489 (ordering the plaintiff to
appear in court on May 24 and warning that a failure to appear may result in dismissal); ECF No. 491 (Plaintiff's

Similarly, the new authorities the plaintiff cites (which she could have cited in her May 31 motion for reconsideration) are inapt and do not set forth any principles the Court has overlooked.  In *Fairey v. Tucker*, 567 U.S. 924 (2012), the Court denied certiorari and issued no opinion.  The plaintiff relies on an opinion by Justice Sotomayor dissenting from the denial of certiorari.  But even that opinion does not help her because the facts of the case are plainly distinguishable.  A state court tried and convicted Fairey, a *criminal defendant*, in absentia on felony charges because he had failed to appear on the scheduled trial date, of which he "*had not received actual notice*."  132 S. Ct. at 2218 (emphases added).  Here, by contrast, the civil plaintiff not only received actual notice of her trial dates but attended the first day of trial and received actual notice that her case would be dismissed if she did not show up in court on a subsequent day.  *See* note 2, *supra*.

In *Blazina v. Port Authority of New York and New Jersey*, 361 F. App'x 180 (2d Cir. Jan. 14, 2020), the Second Circuit vacated the district court's dismissal because each of the five factors courts must consider under Rule 41(b) weighed against it: "the District Court dismissed the complaint after a less-than-one-hour delay" by the plaintiff's counsel in appearing for the start of the trial; "the District Court had not previously put plaintiff's counsel on notice that any delay could result in dismissal"; the district court failed to consider the feasibility of lesser sanctions; and there was no evidence that the defendants would be prejudiced by further delay and no evidence that docket-management considerations outweighed the plaintiff's interest in

---

response to ECF No. 489).  Likewise, the plaintiff's assertion that the Court did not "consider the feasibility of any other less dramatic" sanction ignores the Court's dismissal ruling.  *See* ECF No. 500 at 19-20 (finding that the fifth factor in the Rule 41(b) analysis "—whether the judge has adequately considered a sanction less drastic than dismissal—also favors dismissal").  The plaintiff adds that "[o]ne alternative could have been to delay the trial for a few days." ECF No. 511 at 11.  The Court would indeed have considered that alternative had the plaintiff shown up in court, as she was ordered to do, which would have enabled the Court to determine if and when the plaintiff might be able to continue the trial while the Court retained the jurors for a couple more days.  The plaintiff's failure to comply with court orders foreclosed that possibility.

being heard.  *Id*. at 181.  Merely recounting those considerations in *Blazina* underscores the sharp differences between that case and this one, where the Court found that each of the same five factors weighed in favor of dismissal.  *See* ECF No. 500 at 16-20.

Finally, in *Jefferson v. Webber*, 777 F. App'x 11 (2d Cir. 2019), the Court of Appeals vacated the district court's dismissal, finding that "four out of the five factors weigh considerably against dismissal," including that the case "was delayed by both sides," the defendant's "own noncompliance [with court orders] and requests for extensions undermine[d] its claim of prejudice," the plaintiff's delay did not affect the court's docket in a way that would "justify the subrogation of his right to be heard to the convenience of the court," and "the court did not adequately consider lesser sanctions." *Id*. at \*14-\*15.  Again, this Court made the opposite findings as to four of the same five factors, such that all the factors here weighed in favor of dismissal.  And the facts were, again, starkly different.  In *Jefferson*, the pro se plaintiff was indigent and, apparently, poorly informed about court procedures, unlike the plaintiff here, an experienced litigant who attended law school, is a licensed physician, and lived in a large home in one of the wealthiest towns in Fairfield County.[3]  In *Jefferson*, there were multiple delays caused by the conduct of both sides, none of which took place at the expense of jurors or prospective jurors because the parties never reached a scheduled trial date; here, by contrast, on

---

[3] Plaintiff has filed three other cases before this Court, *see* Dkt. No. 3:24-cv-00792; Dkt. No. 3:20-cv-00013; Dkt. No. 3:20-cv-00630; and this case and another have been before the Second Circuit, *see Pal. v. Cipolla,* No. 24-1695 (2d. Cir. filed June 26, 2024); *Pal v. Canepari et al.*, No. 23-807 (2d. Cir. filed May 15, 2023; decision rendered Sept. 30, 2024).  She has also filed cases in other federal and state courts.  *See, e.g.*, *Neelu Pal v. Jersey City Medical Center*, 2:11-cv-06911 (D.N.J. filed Nov. 23, 2011); *Neelu Pal v. Jersey City Medical Center*, No. 14-4605 (3d Cir. filed Dec. 4, 2014); *Pal v. Est. of Hafter*, No. 80478 (Nev. App. filed May 27, 2021).  *See also* ECF No. 291-1 at 16 (noting Plaintiff is "an experienced pro se litigant, a licensed medical doctor, and she earned 22 law school credits, before she quit law school," and that two other courts have described her as a vexatious or untrustworthy litigant); ECF No. 61 (Plaintiff's former counsel citing, in support of his motion to withdraw, Plaintiff's "experience as a pro se litigant in federal trial and appellate matters" and listing cases).

And, as this Court has previously noted, the plaintiff "lived during the relevant events in a large home in Wilton, Connecticut, one of Connecticut's wealthiest towns."  ECF No. 311 at 8 n.3.

the two occasions on which prospective jurors were or were about to be assembled and on a third

occasion on which a jury was actually selected and began hearing the evidence, it was the

plaintiff alone who caused the delays.[4]  Finally, unlike this case, *Jefferson* did not involve a

longstanding pattern of noncompliance with court orders by the pro se plaintiff in which the

plaintiff's failure to comply with mid-trial orders directing her to appear and provide information

about her absences was the final straw.  *See* ECF No. 500 at 16-17.

### B.  Motion for New Trial

#### 1.  Legal Standard

A district court should grant a motion for a new trial when it finds that "the jury has

reached a seriously erroneous result or the verdict is a miscarriage of justice."  *Song v. Ives*

*Laboratories, Inc.,* 957 F.2d 1041, 1047 (2d Cir. 1992).

#### 2.  Discussion

The Court dismissed this case under Rule 41(b) on the third day of the trial, after the

plaintiff failed to appear in violation of court orders.  Because the trial was not completed, the

jury did not reach any verdict or "result," erroneous or otherwise, and the plaintiff does not

otherwise explain why she seeks a "new trial."[5]  A motion for new trial is inapt when no trial was

completed, and so the plaintiff's motion for a new trial is denied.

---

[4] Among other misstatements of the record included in her motion, the plaintiff asserts that the Court was unfair because it earlier "granted multiple continuances and rescheduling of trial dates to allow defendants and their attorneys to take time off for personal leave and go on vacations."  ECF No. 511 at 11-12. In fact, the court denied two motions to postpone the trial to accommodate a vacation by counsel for the Ambulance Defendants, relenting only after the plaintiff filed a motion urging the Court to set the trial for one of the dates she had agreed on with defense counsel for a short postponement.  *See* ECF Nos. 413, 417, 418, and 421.  Earlier in the case, the court did grant a motion to continue the trial date to accommodate the vacation schedule of counsel for the Wilton Defendants (ECF Nos. 301 and 302), but that motion, to which the plaintiff did not object, was filed four months before the then-scheduled trial date, which meant that neither the parties nor the Court nor any prospective or actual jurors were inconvenienced by the delay.

[5] Another of the plaintiff's misstatements is her assertion that the Court "awarded a jury verdict in favor of defendants."  ECF No. 511 at 5.  To the contrary, the Court dismissed the jury after waiting unsuccessfully for the

### C.  **Rule 60**

Though she offers no analysis on this issue, the plaintiff also cites Rule 60 in her motion (ECF No. 511 at 1), and for the sake of completeness, the Court will consider whether it should grant her any relief under that provision.

Rule 60(b) allows a court to relieve a party from a judgment due to (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud; (4) the judgment being void; (5) the judgment having been satisfied, released, or discharged (and other circumstances equally inapplicable here); and (6) any other reason that justifies relief.  Fed. R. Civ. P. 60(b).  Subdivisions (3), (4), and (5) are obviously inapplicable, and nothing in the plaintiff's motion suggests she believes otherwise.  As for subdivision (2), the Court has already addressed why, to the extent that any of her medical records could be considered "newly discovered evidence," they could have been presented earlier with due diligence and do not in any event provide grounds for granting the plaintiff relief.  That leaves subdivisions (1) and (6).  As for (1), the plaintiff does not claim "mistake," "inadvertence," or "surprise."  And she cannot credibly claim "excusable neglect":

> Excusable neglect encompasses inadvertence, carelessness, and mistake, and may be found where a party's failure to comply with filing deadlines is attributable to negligence.  However, courts are not likely to find excusable neglect where there has been abuse by a party.  In addition, the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.  Those circumstances include prejudice to the adversary, the length of delay, the reason for the error, the potential impact on the judicial proceedings, whether it was within the reasonable control of the movant, and the movant acted in good faith.

---

plaintiff to show up on May 24, having sent the jurors home when the plaintiff did not show up on May 23 and having directed them to return the next day.

*Carcello v. TJX Cos.*, 192 F.R.D. 61, 62-63 (D. Conn. 2000) (internal quotation marks and citations omitted).

As noted, the plaintiff does not claim she made a "mistake" or that her conduct was "inadvertent," and the record does not support a finding that her failure to comply with the Court's many orders, including its May 23 orders to file materials on the docket and to appear, was the product of negligence. The Court posted clear orders on the docket on May 23 (ECF Nos. 486, 487, 489, and 493), and the plaintiff obviously had notice of them because she contacted the Court by email and phone after most of the orders were posted and responded to one of them, albeit without attaching any of the materials she was required to file. ECF No. 491. She did not neglect to file materials on the docket or accidentally miss court; she deliberately chose to take those actions and, despite the car accident, her failure to comply with the court's orders was "within [her] reasonable control." *See* ECF No. 500 at 13-14; *see also id.* at 10 (noting the plaintiff told the courtroom deputy in a May 24 telephone call that she was aware that she was supposed to be in court but that she would not attend).

Further, as detailed in my ruling dismissing the case, her conduct formed part of a larger pattern of delay and willful violations of court orders in this long-running, highly acrimonious lawsuit. *See* ECF No. 500 at 15-17. That pattern leads the Court to conclude that, while she was in a car accident, her failure to comply with court orders later that day was not in good faith. I have already considered the remaining equitable considerations under Rule 41(b), including prejudice to the adversary, the length of the delay, and the impact on judicial proceedings (which, here, includes jurors), and found all of them to weigh in favor of dismissal. *See* ECF No. 500 at 12, 18, and 19.

As for Rule 60(b)(6), the plaintiff must show "extraordinary circumstances," *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012), which she has not done. To be clear, the issue is not whether a party's becoming involved in a car accident on the second day of trial is an "extraordinary circumstance" warranting a failure by the party to continue with the trial; under some circumstances it might be. The issue is, instead, whether extraordinary circumstances excused the plaintiff's failure on May 23 to file materials on the docket and to attend court on May 24, conduct that prevented the Court from obtaining vital information it needed to decide whether to retain the jury; whether to resume the trial the next day, a Friday; or whether to resume the trial after a short respite over the weekend. Apart from the Court's two previous rulings and its discussion above, the plaintiff's May 23 medical record alone makes clear that her failure was not the result of extraordinary circumstances. Noting that the plaintiff was an "overall poor historian," the record documents a normal exam, steady gait, negative results on imaging, no diagnosis, and a discharge from the hospital less than two hours after the plaintiff arrived. ECF No. 505-2 at 2-3. No extraordinary circumstance excused the plaintiff's continued willful noncompliance with court orders and, as noted above, the evidence she has submitted does not even show she was unable to continue with the trial on May 24.

Rule 60 provides no grounds warranting relief from the judgment.

## III.   DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS (ECF NO. 501)

Although the Court agrees that the plaintiff's conduct wasted the time of the defendants and their counsel—at a minimum because, had she complied with even the Court's May 23 orders requiring her to file materials on the docket, the Court might have had some basis to give the jurors and the parties the day off on May 24 and to resume the trial after the weekend—, it declines to award the defendants attorneys' fees and costs related to defense counsel's

preparation for court on the evening of May 22 or the day of May 23.  The Court has already imposed a harsh but deserved sanction for the plaintiff's conduct in this case in the form of dismissal under Rule 41(b).   The defendants do not cite, and the Court is unaware of, any court decisions that both dismissed a plaintiff's lawsuit under Rule 41(b) and, for the same reasons, imposed an award of fees and costs against the plaintiff.  The Court declines to impose any additional sanction here and denies the Defendants' motion (ECF No. 501).

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES ECF No. 501 and 511 and GRANTS ECF No. 515.

IT IS SO ORDERED.

                                  _____/s/_____

                                  Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

        September 30, 2024